RICHARD HAYDEN, PLAINTIFF-APPELLANT, v. JOSEPH CURLEY AND CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued February 7, 1961—Decided April 11, 1961.

*Mr. Bernard Chazen* argued the cause for the plaintiff-appellant (*Mr. Jacob R. Friedman,* attorney; *Messrs. Baker, Garber & Chazen,* of counsel; *Mr. Bernard Chazen,* on the brief).

*Mr. Samuel H. Nelson* argued the cause for the defendant-respondent Joseph Curley (*Mr. Edmond J. Dwyer,* attorney).

*Mr. Cyril J. Galvin* argued the cause for the defendant-respondent City of Jersey City (*Mr. Ezra L. Nolan,* attorney).

The opinion of the court was delivered by

PROCTOR, J. This is a sidewalk accident case. Plaintiff sought damages for injuries sustained when he tripped and fell over a portion of a public sidewalk, allegedly broken and raised by the roots of a tree which was planted in the sidewalk by the City of Jersey City at the abutting property-owner's request. Joined as defendants were the property owner, Joseph Curley, the City of Jersey City, and the City Forester, David Post. The trial court granted a dismissal as to Curley and Post at the conclusion of all the evidence, and as to the city on a reserved motion after the jury returned a verdict in favor of the plaintiff. The plaintiff appealed only from the judgments of dismissal in favor of the defendants Curley and Jersey City. The Appellate Division affirmed and we granted plaintiff's petition for certification. 33 *N. J.* 332 (1960).

When considering the propriety of granting a motion for dismissal, the court must regard the evidence and inferences arising therefrom in the light most favorable to the plaintiff. Applying that standard to the present case, we find that the evidence discloses the following:

Since 1893, this State has had an enabling act which permits municipalities to create commissions with the power to exercise exclusive control over the regulation, planting and care of shade trees in and along their highways. *P. L.* 1893, *c.* 285 (now *N. J. S. A.* 40:64–1 to 14). Pursuant to that statute, Jersey City, in 1912, adopted an ordinance concerning the planting, care and control of shade trees along its streets. Under the provisions of that ordinance, in force today, no one without the written permission of the city may "cut, remove, break, climb, or in any manner injure, or cause, authorize or procure the removal, cutting, breaking, climbing or injuring" of any shade tree on any

municipal public highway, or obstruct the "free access of air and water to the roots" or "plant or set out or cause, authorize or procure the planting or setting out of any [such] * * * tree." Violators of the ordinance are subject to fine. The city Shade Tree Bureau exercises the shade tree control provided for by the ordinance. If a property owner requests the planting of a tree in the sidewalk adjacent to his premises, the Bureau provides the tree, and is in sole control of its planting and subsequent care. It has, however, no regular or systematic program of inspection and maintenance. Employees of the Bureau do not make inspection tours; and they are not instructed to look for or report observable dangerous conditions relating to municipally-controlled trees. Instead, the Bureau relies upon complaints from interested citizens for information about conditions which require its attention.

In May 1939, the Bureau, pursuant to defendant Curley's request and for a charge of $3, planted a shade tree in the sidewalk in front of his house. Over the years the tree grew, so that at the time of plaintiff's mishap it was sixteen inches in diameter at the base of the trunk, and the roots had raised and broken three contiguous slabs of concrete. One slab had been raised four inches above the adjoining slab. This condition existed for about five years before the plaintiff's accident, and was readily observable. Plaintiff's expert testified that all "the adjoining slabs of this tree, as they radiate to the tree itself, they're heaved, and as they go away they become depressed." This testimony and photographs admitted in evidence clearly show that the causal relationship between the defective sidewalk and the growth of the tree roots was also ascertainable by visual inspection. The records of the city indicate the Shade Tree Bureau inspected the tree once—at the defendant Curley's request—about four months prior to the accident, to remove a limb broken by a storm. The Bureau employees who removed the limb did not report the condition of the abutting sidewalk to their superiors.

On November 8, 1957, at about 5:30 P. M., the plaintiff, while walking in front of defendant Curley's home, tripped and fell over the raised sidewalk. At the time of his fall the weather was clear; the streets were dry; it was becoming dark; and a street light twenty-four feet from the location of the accident was lit. Plaintiff lived in the neighborhood but had not walked on that part of the street for ten years prior to the accident.

Defendant Curley had made minor repairs to the sidewalk but not in the location where the fall occurred.

■ We first consider the propriety of the dismissal in favor of the defendant Jersey City. The trial court granted the city's motion on the ground there was no evidence that the city knew of the condition of the sidewalk or that the condition was traceable to the growth of the tree, and that therefore, there was no evidence of negligence. The Appellate Division affirmed on a different ground. Plaintiff made no assertion below that the city in planting and maintaining trees was engaged in a proprietary function. Under our decisional law, a municipality is liable for the injury-inflicting conduct of its servants engaged in governmental functions only if the plaintiff proves "active wrongdoing." *McAndrew v. Mularchuk,* 33 *N. J.* 172, 181 (1960). The Appellate Division held that the plaintiff did not sustain this burden.

■ To constitute "active wrongdoing" a municipality's injury-inflicting conduct must consist of something more than a negligent failure or omission to act. *Buckalew v. Board of Chosen Freeholders of Middlesex,* 91 *N. J. L.* 517 (*E. & A.* 1917) (county held not liable for failure to repair road defects caused by natural elements). The city argues that since there is no evidence it improperly planted the tree, its culpatory conduct, if any, consisted solely of a failure to prevent or correct the subsequently-arising sidewalk defect, *i. e.,* the alleged misconduct was an omission to act rather than active wrongdoing. The evidence, however, would sustain a finding that but for the city's affirmative act of planting the tree in the sidewalk, the dangerous condition causing

plaintiff's injury would not have materialized. The question for decision is whether the affirmative act of planting the tree coupled with the subsequent failure adequately to inspect and maintain the site constituted active wrongdoing.

█ The expression "active wrongdoing" was first used in this State in *Hart v. Board of Chosen Freeholders of Union*, 57 *N. J. L.* 90 (*Sup. Ct.* 1894). There, the court, holding the county liable for injuries resulting from its creation of an unguarded excavation in a public highway, said:

"We have not been pointed to any precedent extending exemption from liability to cases of *active wrongdoing*, nor are such precedents to be discovered. There is no reason arising out of public policy why municipal corporations should be shielded from liability when a private injury is inflicted by their wrongful acts, as distinguished from mere negligence. The grounds on which the exemption has been rested in the one class of cases are inapplicable to the other class." (Italics added.) *Id.*, at *p.* 93.

Following the lead of *Hart,* our courts have often found active wrongdoing (or "positive misfeasance" as they sometimes call it) where the plaintiff was injured by a municipally-created public nuisance—ordinarily, an obstruction in the public way entailing unreasonable risk of harm to travelers. *E. g., Milstrey v. City of Hackensack, 6 N. J.* 400 (1950); *Fredericks v. Town of Dover, 125 N. J. L.* 288 (*E. & A.* 1940); *Taverna v. City of Hoboken, 43 N. J. Super.* 160 (*App. Div.* 1956), *certiorari* denied 23 *N. J.* 474 (1957). The negligent creation of such a public nuisance is usually the result of an affirmative act accompanied or followed by an omission. It is the omission which transmutes the condition created by the prior affirmative act from a lawful obstruction into a nuisance. The affirmative act of creation and the accompanying or subsequent omission form a sequence of events leading up to and causing injury to the traveler. Our courts have held that an affirmative act in the causative sequence resulting in injury is sufficient to sustain municipal liability. The last event

in the sequence may be non-action, but the total sequence constitutes active wrongdoing. *Hartman v. City of Brigantine,* 42 *N. J. Super.* 247, 259 (*App. Div.* 1956), affirmed 23 *N. J.* 530 (1957). Hence, municipalities have regularly been held liable to injured travelers for creating an obstruction in the public way and either contemporaneously or subsequently omitting to provide adequate safeguards. *E. g., Fisher v. Town of Nutley,* 120 *N. J. L.* 290 (*E. & A.* 1938); *Messier v. City of Clifton,* 24 *N. J. Super.* 133 (*App. Div.* 1952); *Reardon v. Borough of Wanaque,* 132 *N. J. L.* 536 (*Sup. Ct.* 1945); *Hammond v. County of Monmouth,* 117 *N. J. L.* 11 (*Sup. Ct.* 1936); see *Cochran v. Public Service Elec. Co.,* 97 *N. J. L.* 480 (*E. & A.* 1922).

In *Cochran, supra,* the court said that a safety isle properly constructed by the city in the center of a street might become a nuisance if a light thereon was not properly maintained to provide illumination, and that although this nuisance was the immediate result of a negligent omission, the city would be liable for positive misfeasance. Similarly, in *Messier, supra,* the plaintiff was injured while riding in an automobile which struck an electric light pole on a safety isle properly constructed in the center of a highway under the joint control of the municipality and the county. At the time of the accident, the light on the pole was not lit and the municipalities had failed to take corrective action. The court held that the liability of the city and county was a question for the jury, and said:

"The resolution of the question of what conduct constitutes actionable misfeasance on the part of a municipality as distinguished from conduct which is non-actionable nonfeasance presents considerable difficulty, but the principles are fully stated in the opinion of Mr. Justice Heher in *Milstrey v. City of Hackensack, supra,* [6 *N. J.* 400 (1951)] at *pages* 404 and 405:

'The jury could well have found negligence giving rise to a public nuisance in the course taken here. Certainly, that would be so if the condition responsible for the injury had existed from the beginning; it is nonetheless so because the nuisance did not materialize until later, if that was a reasonably foreseeable eventuality. \* \* \*

"* * * Where a nuisance as a consequence of the thing done is within the realm of reasonable foresight, the author is liable as the creator of the nuisance when the danger comes into being.'

Tested by the foregoing principle, the jury might have found in the instant case that the existence of a parkway strip beginning on a curving, widening road, without any infallible warning, constituted a dangerous condition; that since the only warning device was an electric light which admittedly would burn out at intervals, a potential nuisance was created which became an actionable public nuisance when the light was out." *Id.*, 24 *N. J. Super.*, at *p.* 140.

In other words, the municipalities' failure to replace the bulb or repair the light, together with the prior act of erecting the safety isle and pole constituted active wrongdoing.

From the evidence submitted in the present case, a jury could have reasonably concluded the following: by ordinance, the city assumed exclusive control of the planting and maintenance of shade trees in the public sidewalks. It planted a tree in front of defendant Curley's premises. Through natural processes, the tree roots grew and heaved the surrounding sidewalk. The condition of the sidewalk was observable and readily traceable to the spreading of the tree roots. The city did not inspect the tree and surrounding area. Four months before the accident, municipal employees worked at the site of the broken sidewalk, but took no steps to report the condition or correct it. The broken sidewalk constituted a dangerous condition causing plaintiff's injury.

Applying the previously discussed principles of law to the foregoing facts, we find that there was enough evidence of active wrongdoing on the part of the municipality to avoid a dismissal. By planting the tree, the city affirmatively created an obstruction in the public way. The jury could find it was reasonable foreseeable at the time of the planting that the tree in the course of its natural growth, which includes the growth and spreading of its roots, would probably disrupt the alignment of the sidewalk. Put another way, a jury could find it was reasonably foreseeable that the tree, if not properly inspected and maintained, would

so affect the surrounding sidewalk as to develop from a potential to an actual public nuisance. By assuming sole responsibility for the maintenance of the tree, the city also assumed the duty of avoiding dangerous conditions attributable to its growth. There was evidence that the city failed to fulfill that duty. Under these circumstances, the jury could have reasonably found that the planting of the tree without subsequent adequate inspection or maintenance constituted active wrongdoing. Accordingly, we hold that the trial court erred in granting the city's motion for dismissal.

■ Plaintiff also urges reversal of the judgment in favor of the city on the ground that the planting and maintaining of shade trees is a proprietary function of the municipality and that therefore a negligent omission is sufficient to sustain liability. *Cf. Weeks v. City of Newark*, 62 *N. J. Super*. 166 (*App. Div.* 1960), affirmed opinion below, 34 *N. J.* 250 (1961). The plaintiff did not advance this argument in any of the proceedings below, and did not include it in his petition for certification to this court. Additionally, the city has not briefed or argued the point. For these reasons we consider it inappropriate to decide the issue.

■ We next consider the propriety of the dismissal in favor of the defendant Curley. An abutting property owner is not liable for injuries suffered by a pedestrian from a defective sidewalk unless the owner or his predecessors in title created the defect. *Moskowitz v. Herman*, 16 *N. J.* 223, 225 (1954). There is no suggestion in the present case that defendant Curley or prior owners of the premises improperly constructed the sidewalk or repaired that part where the fall occurred. Nor is there any suggestion that the defect occurred because of an activity, commercial or otherwise, carried on by the defendant or prior owners. The sole allegation is that the condition resulted from the natural growth of the tree roots. The fact situation here is almost identical with that of *Rose v. Slough*, 92 *N. J. L.* 233 (*E. & A.* 1918). There the plaintiff also sued the abutting

property owner for injuries suffered when she tripped over a sidewalk raised by the natural growth of the roots of a tree planted by the city. Reversing a judgment in favor of the plaintiff, the Court of Errors and Appeals said:

"[W]here a municipality, in pursuance of state legislative sanction, assumes control of the trees within its territory, an abutting owner, on a street of such municipality, is relieved from the care of a tree standing on the sidewalk in front of his premises, to the extent that he will be exempt from liability to respond in damages in a civil action to an individual who has suffered an injury of which the tree was the producing cause." *Id.*, at *p.* 239.

In the present case, the municipality, by ordinance adopted pursuant to state statute, assumed exclusive control of the planting and maintaining of shade trees in the public sidewalk. The assumption of such control relieved defendant Curley of any responsibility for maintaining the planted tree. That he requested the city to plant the tree and paid a small charge can have no effect upon the fact that exclusive control of its maintenance was in the municipality's hands. On these facts, *Rose v. Slough* is controlling, and we hold that the trial court properly granted a dismissal in defendant Curley's favor.

Since we find there was sufficient evidence of active wrongdoing on the part of the city to avoid a dismissal as to that defendant, that judgment is reversed. When the trial court granted the municipality's reserved motion of dismissal, it noted that the jury's award of $1,700 to the plaintiff was the result of a compromise verdict. Plaintiff does not challenge that finding. Therefore, we remand the case as to the city for a new trial on all issues. The judgment of dismissal in favor of the defendant Curley is affirmed.

*For reversal in part and affirmance in part*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.