244 N.J. Super. 32 (1990)
581 A.2d 524
SARAH SIMS AND SHARON SIMS, PLAINTIFFS,
v.
CITY OF NEWARK, PHILIP BAGBY AND DOLLIE BAGBY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
June 28, 1990.
*35 Edward A. Colligan for plaintiffs (Colligan & Colligan, attorneys).
Siobhan A. Teare for defendant City of Newark (Glenn A. Grant, Corporation Counsel, attorney).
John J. Fannan, for defendants Philip Bagby and Dollie Bagby (Lee Graham Karosen, attorney).
VILLANUEVA, J.S.C.
This is an action against the City of Newark (city) and Philip Bagby and Dollie Bagby, property owners for property damage and personal injuries sustained by plaintiffs when a decayed tree limb fell on their parked car.
The issue involved in the city's motion for summary judgment to dismiss the complaint is whether a city is liable for negligent maintenance of all trees bordering its streets.
The court holds that the city enjoys immunity under N.J.S.A., 59:2-3(a) and -3(c) because the city's inspection and maintenance, or lack thereof, of all trees bordering its streets constitutes a discretionary decision and its inaction was not palpably unreasonable. In addition, the city's decision not to allocate resources for inspections of all its trees was not palpably unreasonable. N.J.S.A. 59:2-3(d).
The issue involved in defendants Bagbys' motion for summary judgment is whether they are liable for alleged negligence in maintenance of a "shade" tree that they did not plant which was located on the adjoining right-of-way. Although all parties *36 have agreed[1] that the subject tree was located outside the boundary of Bagbys' property, plaintiffs insist that adjoining owners are still responsible for negligent maintenance of such trees. The court holds that regardless of whether or not the tree was actually on Bagbys' property the city assumed control over such trees and by ordinance has expressly prohibited any person from trimming, cutting or pruning any tree in or on a public street without its permission. Having been relieved by ordinance of any duty to exercise control over trees on property which adjoins an owner's premises, adjoining owners are not liable for injuries which result from a condition of such trees.

I.
On November 16, 1984, plaintiffs, Sarah Sims and Sharon Sims, were sitting in a car parked at the curb on the southwest side of Nairn Place near the intersection of Clinton Avenue in Newark when a tree limb fell onto the roof of the car owned by Sarah Sims, damaging the car and causing personal injuries to both plaintiffs.
The tree from which the limb fell was situated in the grassy area between the sidewalk and the curb of the three-family house at 656-658 Clinton Avenue owned by defendants, Philip Bagby and Dollie Bagby.
There is no evidence that the city or any of its employees had anything to do with the property.
Plaintiffs contend that an inference of constructive notice by the city can be drawn because the general condition of the tree was unhealthy. Many of the large branches of the tree did not have smaller branches from which leaves could grow. Much of the tree was dead. Most of the leaves that were on the tree were clustered along very small shoots that sprouted from the *37 trunk (water sprouts). An unpruned ragged break existed at the top of the tree. This area of the tree from which the branch fell was deteriorated.
The only competent evidence as to the cause of the tear where the branch broke off at the top of the tree was that it was consistent with storm damage. (Deposition of David Sauro, who was hired by the city after this accident.)
Although 60 to 80 years ago the city planted this type of tree, a Norway Maple, it is impossible to determine now who planted this particular tree.
Nancy Smith, the contractual services coordinator of the city, stated in her affidavit that her review of contracts and files for any reference to tree services performed at Nairn Place or Clinton Avenue showed that the city had entered into five contracts which pertained to the maintenance of trees in 1983. None of these contracts referred to any tree maintenance services performed at either Clinton Avenue or Nairn Place.
There is no formal inspection of shade trees by the city. It is a matter of economics what trees should be taken care of and removed. The city itself does not do any tree trimming  but contracts it and privatizes it.
Liability for injuries caused by a condition of public property is defined in chapter 4 of the Tort Claims Act:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under Section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable. [N.J.S.A. 59:4-2].
*38 Therefore, under the provisions of the act, before any liability can be imposed upon the City of Newark, plaintiffs must first prove that the tree which they allege caused their injuries was a dangerous condition and is property owned or controlled by the city.
Pursuant to Title 59 of the act "dangerous condition" means:
a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used. [N.J.S.A. 59:4-1(a)]
Public property is defined in the act as:
real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity. [N.J.S.A. 59:4-1(c)]
Plaintiffs contend that the city controlled the tree because it was incumbent upon the property owner to notify the city and obtain permission to cut, prune or trim any tree in or on a public street.
Newark revised ordinance 18:1-3 states:
Permit to trim trees required. No person shall trim, cut or prune any tree in or on a public street without written permission of the bureau of parks and grounds. If the chief of the bureau shall determine that the proposed trimming, cutting or pruning is necessary, and the proposed method and workmanship thereof is approved, the bureau of parks and grounds shall issue a written permit for such work to be performed and all work done under such permit shall be performed in strict accordance with any terms contained in the permit. [R.O. 1951, § 28.2]
This ordinance was written to insure that a licensed individual who has been trained in arboriculture is utilized in curing any problems arising from trees. Its purpose is to have the problem remedied and not create another more serious condition.
A shade tree commission has the power, inter alia, to exercise full and exclusive control over the regulation, planting and care of shade and ornamental trees and shrubbery in any public highway, park or parkway, including the planting, trimming, spraying, care and protection thereof and to require the removal *39 of any tree, or part thereof, dangerous to public safety. N.J.S.A. 40:64-5.
A municipality may provide by ordinance that
... the regulation, planting, care and control of shade and ornamental trees and shrubbery upon and in the streets, highways, public places, parks and parkways of the municipality, except State highways, unless the Department of Transportation shall assent thereto and except county highways, parks and parkways, in counties now or hereafter having a county shade tree commission, unless the county shade tree commission or county department of parks and recreation shall assent thereto, shall be exercised by and be under the authority of a commission, which shall be known as the shade tree commission of.... [N.J.S.A. 40:64-1]
Section 2:98-4 of the revised ordinances of the city places the responsibility for "shade trees" in a Division of Parks and Grounds within the Department of General Services:
There shall be within the Department of General Services a Division of Parks and Grounds ... which shall:
(a) Care for all city parks and public grounds, including the trees, lawns and landscaping appurtenant to public buildings;
(b) Care for the pruning, trimming, removal and planting of shade trees in the streets and all other public places in the city. [5-2-79, Section 1]
A state statute specifically provides immunity to "any shade tree commission ... responsible for the death or injury of any person, or for any injury to any property or highway tree or shrub." N.J.S.A. 40:64-14.
Even though the City of Newark has not created a shade tree commission, the city may be entitled to the immunity contained in N.J.S.A. 40:64-14. However, in the only case where this statute is discussed, Bennett v. Gordon, 101 N.J. Super. 252, 244 A.2d 135 (App.Div. 1968), the Appellate Division expressed no opinion as to the effect of it. It held that a municipality could properly make a policy decision to limit the scope of maintenance work on the shade trees in the municipality for which it should not be responsible in tort. The failure to do more than trim the branches of trees was the result of budget limitations and the exercise of legislative discretion. Id. at 257-258, 244 A.2d 135.
*40 The responsibility for the maintenance and repair of the sidewalk abutting commercial property lies, not with the public entity, but with the commercial landowner. Christmas v. City of Newark, 216 N.J. Super. 393, 396, 523 A.2d 1094 (App.Div. 1987), certif. den. 108 N.J. 193, 528 A.2d 19 (1987). Most municipalities have within their bounds miles of sidewalks. As our largest city, Newark has a proportionately increased number of miles of sidewalks abutting commercial property. Id. 216 N.J. Super. at 396, 523 A.2d 1094. Likewise, it has hundreds of thousands of trees bordering its streets.
The Tort Claims Act preserves common law immunities for municipalities. Its purpose was to establish immunities for municipalities; it was not designed to create liability. N.J.S.A. 59:1-1 et seq. Woodsum v. Pemberton Tp., 172 N.J. Super. 489, 517, 412 A.2d 1064 (Law Div. 1980), aff'd 177 N.J. Super. 639, 427 A.2d 615 (App.Div. 1981).
The act re-establishes the all-inclusive immunity from tort liability for "public entities" except as otherwise provided by specific provisions therein imposing liability on them. N.J.S.A. 59:1-1 et seq.; East Brunswick Tp. v. Middlesex County Bd. of Freeholders, 224 N.J. Super. 44, 539 A.2d 756 (Ch.Div. 1987); Fox v. Township of Parsippany-Troy-Hills, 199 N.J. Super. 82, 488 A.2d 557 (App.Div. 1985), certif. den. 101 N.J. 287, 501 A.2d 949 (1985); Rochinsky v. State of N.J., Dept. of Transp., 110 N.J. 399, 541 A.2d 1029 (1988).
As a general rule, the analytical "approach should be whether an immunity applies and if not, should liability attach." N.J.S.A. 59:2-1, comment. Troth v. State, 117 N.J. 258, 265-266, 566 A.2d 515 (1989).
Nowhere in the Tort Claims Act is the statutory immunity of a shade tree commission either expressly abrogated or codified as was the common law immunity for snow-removal activities in Rochinsky v. State of N.J., Dept. of Transp., supra, 110 N.J. at 411, 541 A.2d 1029.
*41 Under an ordinance whereby a municipality authorized the assumption by a shade tree commission of complete control and maintenance of trees and limited such control on the part of an abutting owner, the failure of the borough, which had not planted the tree in question, to inspect or maintain it was not an affirmative act of wrongdoing and did not render it liable for injuries sustained by a woman who fell on an up-raised portion of the sidewalk which was caused to heave by a tree root underlying it. Bennett v. Gordon, supra.
To constitute "active wrongdoing" prior to the adoption of the act in 1973, a municipality's conduct causing injury had to consist of something more than a negligent failure or omission to act. A municipality could, however, be guilty of active wrongdoing by planting a sidewalk tree and in subsequently failing to adequately inspect and maintain the site with the result that an irregularity in the sidewalk was caused by growth of tree roots. Hayden v. Curley, 34 N.J. 420, 169 A.2d 809 (1961). That case indicates that there was a common law immunity for a municipality from liability for injury or damage caused as a result of its negligence in failing to inspect or maintain trees, whether shade trees or others.
Even if plaintiffs were able to prove that the city maintained a dangerous condition, they would still have to prove that the city had actual or constructive notice of same in order to establish the city's liability.
Plaintiffs contend that the city had constructive notice of the condition of the tree, and thus, it was incumbent upon it to correct the alleged dangerous condition because with normal operations had the city acted reasonably it would have noticed that the tree limb involved was decayed and would have removed it.
The act defines constructive notice:
A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, *42 should have discovered the condition and its dangerous character. [N.J.S.A. 59:4-3(b)]
Existence of an alleged dangerous condition is not constructive notice of it. Even if this tree were decayed, this by itself may not constitute constructive notice that the top limb would break and fall on a car. However, the court need not decide this issue.
Even if the city owned the tree in question, residential property owners could notify the city of any defect in the tree and they would have to obtain permission from the city to trim, cut or prune the tree. The purpose of this ordinance, written pursuant to the police powers conferred upon a municipality, is to protect the general public.
Municipal ordinances do not create a tort duty, as a matter of law. Brown v. St. Venantius School, 111 N.J. 325, 335, 544 A.2d 842 (1988); Yanhko v. Fane, 70 N.J. 528, 536, 362 A.2d 1 (1976); Liptak v. Frank, 206 N.J. Super. 336, 339, 502 A.2d 1147 (App.Div. 1985), certif. den. 103 N.J. 471, 511 A.2d 652 (1986).
Where a municipality, in pursuance of state legislative sanction, assumes control of the trees within its territory, an abutting owner is exempt from liability to respond in damages to an individual who has suffered an injury of which the tree is the producing cause. Rose v. Slough, 92 N.J.L. 233, 239, 104 A. 194 (E. & A. 1918). This immunity of property owners, however, does not create liability of the municipality.
Plaintiffs argue that the city should have inspected all trees bordering its streets. In the comment to N.J.S.A. 59:2-1, the Report of the Attorney General's Task Force on Sovereign Immunity, (1972) (Task Force Report) stated: "[T]he approach should be whether an immunity applies and if not, should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities." King v. Brown, 221 N.J. Super. *43 270, 276-277, 534 A.2d 413 (App.Div. 1987). This is such a case.
The city does not have financial resources or the manpower to inspect every tree bordering every street in the city. The city is allowed to fund and use its resources as it deems best in the face of competing demands. N.J.S.A. 59:2-3(d). The city makes a budget appropriation of over one million dollars annually for tree services but, because of storms and additional problems, it usually has to expend considerably more money.
N.J.S.A. 59:2-3(a), (c) and (d), addresses discretionary activities. It states:
(a) A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;
....
(c) A public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;
(d) A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable....
A city's decision not to allocate resources for repair of curbing was not palpably unreasonable. Mitchell v. City of Trenton, 163 N.J. Super. 287, 291-292, 394 A.2d 886 (App.Div. 1978). Likewise, the decision of the City of Newark not to spend more money in 1985 for planting and maintenance of trees was not palpably unreasonable.
Tree pruning and removal, like snow removal, involves discretionary decisions at every phase of the process: what trees to select, whether to plant, prune or remove them, when and if maintenance is required and the type of maintenance. Therefore, the city has immunity when exercising judgment or discretion in its maintenance of trees, shade trees or otherwise. N.J.S.A. 59:2-3(a) and (c).
*44 Even though a public entity has the burden of proof where the allocation of resource immunity defense is raised, Brown v. Brown, 86 N.J. 565, 578, 432 A.2d 493 (1981); Fox v. Township of Parsippany-Troy-Hills, supra, 199 N.J. Super. at 90, 488 A.2d 557, there can be no dispute that the city's action in not trimming or cutting all limbs of trees or the entire trees which are diseased along all its streets was not unreasonable.
Since plaintiffs cannot prove that it is palpably unreasonable for the city not to have a shade tree commission nor to have a staff large enough to inspect all the trees bordering every street in Newark, the city is entitled to immunity. N.J.S.A. 59:2-3(d).

II.
Bagbys' motion for summary judgment is based upon the fact that the subject tree was not located on the property owned by them but rather on public property and that the city had assumed control over trees bordering its streets and by ordinance has expressly prohibited any person from trimming, cutting or pruning any tree in or on a public street without the city's permission.
The issue herein is what duty, if any, a property owner has with respect to the care and maintenance of trees located on adjoining public property. Under the circumstances of this matter there is no such duty on adjoining landowners.
A landowner whose predecessor in title had planted a tree on property abutting a city street is liable for injuries sustained by a traveler who was struck by a falling branch of a tree that stood near the curb when city authorities had imposed no restriction on a landowner's unlimited right of control of the tree if the owner failed to exercise due care to prevent the tree from becoming dangerous. Weller v. McCormick, 52 N.J.L. 470 (S.Ct. 1890). Annotation, "Liability for Tree Falling on Highway," 94 A.L.R.3d 1160, 1179 Annotation, "Liability  Fall of Tree or Limb," 54 A.L.R.4th 530.
*45 However, in the case of Rose v. Slough, supra, the Court stated:
Where a municipality, in pursuance of state legislative sanction, assumes control of the trees within its territory, an abutting owner, on a street of such municipality, is relieved from the care of a tree standing on the sidewalk in front of his premises, to the extent that he will be exempt from liability to respond in damages, in a civil action, to an individual who has suffered an injury of which the tree is the producing cause. [92 N.J.L. at 239, 104 A. 194].
Further, in Hayden v. Curley, supra, the Supreme Court stated:
In the present case, the municipality by ordinance adopted pursuant to state statute, assumed exclusive control of the planting and maintaining of shade trees in the public sidewalk. The assumption of such control relieved defendant (Curley) of any responsibility for maintaining the planted tree. [34 N.J. at 429, 169 A.2d 809]
Private property owners are generally immune from action for injuries caused by shade trees. In Tierney v. Gilde, 235 N.J. Super. 61, 561 A.2d 638 (App.Div. 1989), plaintiff fell because a concrete sidewalk slab had been raised by a tree root. Plaintiff brought action against the owners of the adjoining private property. The trial court granted defendants' motion for summary judgment based upon their argument that they, as property owners, were immune from liability because the Borough of Merchantville had assumed control over the tree by adopting an ordinance creating a shade tree commission. The Appellate Division reviewed the line of cases creating the immunity and reiterated that an adjoining private property owner is immune from liability because the municipality had a shade tree commission. Id. at 65, 561 A.2d 638. The rationale underlying this immunity is that it would be unfair to impose liability on the property owner for a tree over which the municipality has control. Id. at 63-64, 561 A.2d 638.
There is no difference between the Merchantville ordinance which was the subject of the Tierney decision and section 18:1-3 of the revised ordinances of the City of Newark. The control of the city over its trees is so exclusive that written permission is needed to maintain or remove them. It is therefore fallacious to assert, as plaintiffs do, that "some measure of *46 control remains in the hands of the landowners" because the landowners could "initiate tree work by applying for a permit."
While the matter before the court does not deal with defective sidewalks, the principle enunciated by the court in reaching that ruling is applicable to trees too. If an adjoining property owner is immunized from liability for injuries arising out of the actions of tree roots upon the sidewalks, the same immunity should apply where the tree itself is the direct offending cause.
Generally, one who places or maintains in or near a highway anything which, if neglected, will render the way unsafe for travel, is bound to exercise due care to prevent it from becoming dangerous. Narsh v. Zirbser Brothers, Inc. 111 N.J. Super. 203, 208, 268 A.2d 46 (App.Div. 1970). In Weller v. McCormick, 47 N.J.L. 397, 1 A. 516 (Sup.Ct. 1885) and Weller v. McCormick, 52 N.J.L. 470, 19 A. 1101 (Sup.Ct. 1890) that doctrine was applied to impose liability when a pedestrian was injured by the fall of a dead limb from a tree which had been planted in a sidewalk area by a prior owner of the property.
In 2 Restatement, Torts 2d, § 363(2), the rule is set forth: "a possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." Id. at 258; 39 Am.Jur.2d, Highways, Streets and Bridges, § 542, at 949-950.
The Appellate Division recently discussed the anachronistic distinction between natural and artificial conditions as determining liability of a landowner for a tree which falls from his property onto his neighbor's property for no apparent reason. Burke v. Briggs, 239 N.J. Super. 269, 571 A.2d 296 (App.Div. 1990). It concluded that liability should not be imposed without proof of some negligence or unreasonable activity by defendant. Id. at 274, 571 A.2d 296.
The city, in joining plaintiffs' opposition to Bagbys' motion, contends that Tierney v. Gilde, supra, is inapplicable inasmuch *47 as the city "did not have a shade tree commission in 1984." It is obvious that the aforementioned cases do not consider the name of the controlling body to be dispositive. Rather, it is the act of assuming control over the shade trees by the municipality which immunizes adjoining landowners. Section 2:9B-4 of the revised ordinances of the City of Newark places the duty of care for all such trees within the Department of General Services, a Division of Parks and Grounds.
As further evidence of the control exercised over trees located on public property section 18:1-3 of the revised ordinances of the City of Newark prohibits work on trees without written permission by the city.
An adjoining land owner has no duty to correct a defective condition of a tree on adjoining public property when that same landowner is specifically prohibited by municipal ordinance from trimming, cutting or pruning any tree in or on a public street. As was expressed by the court in Bennett v. Gordon, supra:
It would be obviously inequitable to subject the property owner to liability where he had no right to maintain the tree and no legal authority to remedy any danger it might create. [101 N.J. Super. at 258, 244 A.2d 135]
Plaintiffs also allege that the Bagby defendants, as commercial property owners, have a heightened duty. In Tierney, plaintiff fell on the sidewalk in front of an apartment building. The court in Tierney followed the decision in Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981), and found that, as commercial property owners, the abutting apartment building owners owed a duty to maintain the public sidewalk. Tierney, supra, 235 N.J. Super. at 62, 561 A.2d 638. However, the court found that the existence of a "Shade Tree Commission" immunized the abutting landowner. Id. at 66, 561 A.2d 638. However, no similar duty applies to maintaining trees whether they adjoin residential or commercial property.
As the duty of a commercial property owner to maintain abutting sidewalks does not extend to maintaining *48 curbs that are separated from the sidewalk by a grass strip, Levin v. Devoe, 221 N.J. Super. 61, 533 A.2d 977 (App.Div. 1987), it does not extend to maintaining trees in the right-of-way by the grass strip. A curb separated from the sidewalk by a grass strip is a feature of the road, not the sidewalk. Id. at 65, 533 A.2d 977. Likewise shade trees are for beautification of the road, not related to the sidewalk. Except for sidewalks abutting commercial property and for curbs that are structurally an integral part of such sidewalks, Stewart left undisturbed the Yanhko rule that an abutting property owner is not liable for maintaining the public way. Id. at 64, 533 A.2d 977.

III.
Both motions for summary judgment to dismiss the complaint are granted.
NOTES
[1] Despite this agreement, property owners are deemed to own to the middle of the abutting street subject to the public right-of-way over streets and sidewalks. Yanhko v. Fane, 70 N.J. 528, 540, 362 A.2d 1 (1976).