719 A.2d 664 (1998)
316 N.J. Super. 26
Shirley STRAUS and Theodore Straus, Plaintiffs-Appellants,
v.
The BOROUGH OF CHATHAM, Old Mill Mountain Shop, Inc., t/a Packmasters/Wheelmasters Sporting and/or the Chatham Bike Shop, and Solu and Solu, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1998.
Decided October 29, 1998.
*665 Philip B. Vinick, Roseland, for plaintiffs-appellants (Vinick & Docherty, attorneys; Darryl T. Garvin, on the brief).
Moira E. Colquhoun, Morristown, for defendants-respondents Solu and Solu (Colquhoun & Colquhoun, attorneys; Ms. Colquhoun, on the brief).
Frank J. Kunzier, Parsippany, for defendants-respondents Old Mill Mountain Shop, Inc. t/a Packmasters/Wheelmasters Sporting and/or The Chatham Bike Shop.
Before Judges MUIR, Jr., EICHEN, and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
In this personal injury, sidewalk fall-down case, plaintiffs appeal from the grant of summary judgment to the commercial property owner, defendant Solu and Solu, and the commercial tenant, defendant Old Mill Mountain Shop, Inc., in front of whose premises the accident occurred. The action against defendant Borough of Chatham was settled. The Law Division judge granted summary judgment because Chatham had a municipal shade tree commission and the accident occurred within five feet of a shade tree, an area that came, at least to some extent, under the Commission's jurisdiction.
Plaintiff Shirley Straus alleged that she fell and was injured on June 25, 1993, because of a defect in the brick walkway portion of the sidewalk in front of defendants' commercial premises at 234 Main Street, Chatham. The only evidence submitted to the motion judge was the report of plaintiffs' professional engineer, the contents of which the parties ask us to accept as true for purposes of this appeal. The engineer observed that the sidewalk was thirteen feet six inches wide and was constructed of concrete slabs and brick. The brick surface was eight feet six inches wide and ran from the curb to the beginning of the concrete slabs. A tree, surrounded by a small area of dirt, was located in the brick area, three feet seven inches from the curb. The accident site was in the brick area between the tree and the concrete slabs, but within five feet of the tree. The engineer had the following comments with respect to the defect, which caused the accident:
The Brick surface after the fifth row of bricks, counting from the edge of the concrete slab, is depressed. This depression makes the adjoining bricks projecting 3/4 inches above the surface of the depressed bricks. The projection extends approximately 3 feet. The plaintiff stated that the condition of the sidewalk has not changed and has not been altered since the day of the accident.
I can state with reasonable engineering certainty that the depression of the brick surface was caused by improper preparation of the subgrade.
Mrs. Strauss was walking with her husband on her left side when she stepped on the projecting edge of the brick facing. Her foot was caused to twist and to slip off the projecting edge....
[The p]rojecting edge on the walking surface of the sidewalk makes the sidewalk unsafe and hazardous.
The record contains no evidence as to who planted the tree or who installed the brick portion of the sidewalk. There is also no evidence that the installation of the tree or the growth of its roots had any relation to the cause of the defect.
The Borough of Chatham has a shade tree commission. The commission was created by *666 ordinance, Chatham, N.J., Code § 1-42 (1959), pursuant to the authority provided in N.J.S.A. 40:64-1 to -16. The Shade Tree Commission enacted an ordinance, Chatham, N.J., Code §§ 179-1 to -5 (1966), which states in pertinent part:
No person shall do any of the following acts to any tree on a street without the prior permit of the Shade Tree Commission:
....
B. Cut, disturb or interfere in any way with any root.
....
J. Construct new sidewalks and/or driveways with any material whatsoever within five (5) feet of a tree.

[Id. § 179-2.]
The authority for this specific provision derives from the portion of the state statute that authorizes shade tree commissions to "Regulate and control the use of the ground surrounding the same [i.e., shade trees located on public ways], so far as may be necessary for their proper growth, care and protection". N.J.S.A. 40:64-5b.
Plaintiffs contend that this case is governed by the Supreme Court's decision in Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981). The defendants claim that the existence of the Borough of Chatham Shade Tree Commission provides them with immunity under Rose v. Slough, 92 N.J.L. 233, 104 A. 194 (N.J.E. & A.1918), Hayden v. Curley, 34 N.J. 420, 169 A.2d 809 (1961), and the decision of our court in Tierney v. Gilde, 235 N.J.Super. 61, 561 A.2d 638 (App.Div.), certif. denied, 117 N.J. 666, 569 A.2d 1357 (1989).
In Stewart, the Court overruled Yanhko v. Fane, 70 N.J. 528, 362 A.2d 1 (1976), and held, as a matter of common law, that "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." Stewart, supra, 87 N.J. at 157, 432 A.2d 881.
In Rose, the Court of Errors and Appeals considered the liability of an abutting landowner for an injury caused to a pedestrian by a public sidewalk damaged by shade tree roots and ruled in favor of the landowner in these words:
[W]here a municipality, in pursuance of state legislative sanction, assumes control of the trees within its territory, an abutting owner, on a street of such municipality, is relieved from the care of a tree standing on the sidewalk in front of his premises, to the extent that he will be exempt from liability to respond in damages, in a civil action, to an individual who has suffered an injury of which the tree was the producing cause.

[Rose, supra, 92 N.J.L. at 239, 104 A. 194 (emphasis added.)]
In Hayden, which also involved a fall on a public sidewalk that had been rendered unsafe by the growth of a shade tree root, the Court said:
[T]he municipality, by ordinance adopted pursuant to state statute, assumed exclusive control of the planting and maintaining of shade trees in the public sidewalk. The assumption of such control relieved defendant Curley of any responsibility for maintaining the planted tree.... On these facts, Rose v. Slough is controlling, and we hold that the trial court properly granted a dismissal in defendant Curley's favor.

[Hayden, supra, 34 N.J. at 429, 169 A.2d 809.]
In Tierney, another panel of this court was confronted by a personal injury case involving a pedestrian who fell on a sidewalk in front of a commercial building because a concrete slab had been raised by a tree root. The court took note of the principle enunciated by Rose and reiterated in Hayden, and described its relationship to Stewart in this way:
Although Stewart created a commercial property exception to the general rule established in Rose and Yanhko that a property owner owed no legal duty to keep a sidewalk abutting his property in repair, there was no indication in Stewart that the alternative ground for the ruling in Rose, i.e., that a shade tree commission ordinance *667 immunizes property owners from liability, was affected by that exception.

[Tierney, supra, 235 N.J.Super. at 63, 561 A.2d 638.]
The holding of Tierney is narrower than the above quotation might suggest. The court held that a shade tree commission ordinance immunizes the abutting commercial property owner "from liability for injuries stemming from defective sidewalks caused by shade tree roots." Id. at 65, 561 A.2d 638. The court did not hold that such ordinances provide immunity in the circumstance where the sidewalk defect is unrelated to the planting or growth of the shade tree. Nor is there anything said in Rose or Hayden which necessitates that result. In short, Rose, Hayden, and Tierney are distinguishable from the instant case.
Although Stewart did not consider the relationship of its rule to the circumstance where a shade tree commission exists, we can perceive no justification for carving out an exception to its rule that is not dictated by Rose, Hayden, or Tierney and that would be inconsistent with the values it endorsed and the principle for which it stands.[1] Therefore, summary judgment was improvidently granted.
Defendants, relying on Sims v. City of Newark, 244 N.J.Super. 32, 45-46, 581 A.2d 524 (Law Div.1990), contend that Stewart should not apply because they could not perform repairs to this area of the sidewalk without a permit from the Shade Tree Commission. In our view, the requirement of a permit is irrelevant, unless, of course, the Commission wrongly denies a timely permit request. We adopt as holding in this regard, but limited for present purposes to the factual complex of this case, the following dictum from Learn v. City of Perth Amboy, 245 N.J.Super. 577, 586 A.2d 327 (App.Div.1991):
We ... take the view that if a shade tree commission's consent were required in order for an abutting commercial landowner to repair a sidewalk made dangerous by a tree root, the landowner would still be obliged to seek that consent if he had notice of the defective condition so caused. Certainly, no immunity could attach if he had that knowledge and made no effort, consistent with municipal allocation of responsibility, to effect a repair.

[Id. at 584, 586 A.2d 327.]
Municipal permits are often required before work can be done on private property. In fact, in Chatham abutting landowners are required to maintain public sidewalks, Chatham, N.J., Code § 126-3, but are prohibited from proceeding with the work until a permit is obtained from the Public Works Department, § 126-7, or in some circumstances, from the Road Committee, § 126-8. Those requirements would in no way diminish the commercial landowner's liability, under Stewart, respecting areas beyond the control of a shade tree commission. There is no reasonable basis for treating differently a permit requirement of a shade tree commission from a permit requirement of any other municipal agency.
The defendants also contend that this appeal should be dismissed on the ground that it was filed too late. The summary judgments were granted by orders dated January 10, 1997. However, on that same date, the case against Chatham, which had been dismissed previously, was reinstated. On July 25, 1997, plaintiffs signed a personal release of their claim against Chatham.
*668 The notice of appeal was filed fifty-two days later on September 15, 1997. Without any authority, defendants assert that the time to appeal began to run on the date the release was signed, and therefore, the notice of appeal was untimely. At oral argument, the defendants acknowledged that the stipulation of dismissal regarding the action against Chatham was filed on August 1, 1997. In our view, that was the date of final judgment. Cf. Weed v. Casie Enter., 279 N.J.Super. 517, 527, 653 A.2d 603 (App.Div.1995). Before that date there was no final judgment since all issues had not been resolved as to all parties. See Hudson v. Hudson, 36 N.J. 549, 553, 178 A.2d 202 (1962) ("Our rules ... prohibit direct appeal unless a final judgment has been entered disposing of all issues as to all parties."). Since the appeal was filed within forty-five days of the filing of the stipulation of dismissal, it was timely.
Reversed and remanded for further proceedings.
NOTES
[1] We note that Tierney may well have been overturned by an act of the Legislature, which the parties have not discussed since it post-dated the accident in question. In an amendment to the Tort Claims Act, N.J.S.A. 59:1-1 to:11-1, effective December 5, 1996, the Legislature provided as follows:

The existence of a municipal shade tree commission established pursuant to R.S. 40:64-1 et seq. or a county shade tree commission established pursuant to R.S. 40:37-1 et seq., or the fact that a municipality or county has otherwise provided for the regulation, planting, care, control, or maintenance of trees or shrubs within its jurisdiction, shall not be cause to immunize a private person from liability for an injury caused directly or indirectly by a tree or shrub, or any part thereof, who otherwise would be liable for that injury.
[N.J.S.A. 59:4-10b (emphasis added).]
Since the meaning and effect of this statute has not been briefed, we will not construe it, other than to suggest that the private persons to whom it refers would appear to be the commercial entities exposed to liability by Stewart.