NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1743-12T3

EDWARD McGLYNN, JR., Individually,
as Administrator, and as
Administrator ad Prosequendum
of the ESTATE OF PAMELA J. McGLYNN,
Deceased, and as Guardian Ad Litem
for MELISSA McGLYNN, a minor, and
EDWARD McGLYNN III, a minor; and
JUSTIN McGLYNN, Individually,

    Plaintiffs-Appellants,

v.

STATE OF NEW JERSEY; STATE OF
NEW JERSEY DEPARTMENT OF
TRANSPORTATION; EVELYN BETTS;
THE ESTATE OF ELIZABETH M. KING,
DECEASED; THE ESTATE OF
ETHEL H. HOFFMAN, DECEASED; and
WEICHERT REALTY,

    Defendants,

and

JERSEY CENTRAL POWER AND LIGHT
COMPANY and JAFLO, INC.,

    Defendants-Respondents.

APPROVED FOR PUBLICATION

January 3, 2014

APPELLATE DIVISION

Argued October 16, 2013 — Decided January 3, 2014

Before Judges Reisner, Alvarez and Ostrer.

On appeal from the Superior Court of New
Jersey, Law Division, Warren County, Docket
No. L-2-06.

Steven J. Greenstein argued the cause for appellants (Tobin, Reitman, Greenstein, Caruso, Wiener, Konray & Kessler, P.C., and Stuart M. Kurtzer, attorneys; Mr. Greenstein, of counsel and on the briefs; Mr. Kurtzer, on the briefs).

Thomas C. Hart argued the cause for respondent Jersey Central Power and Light Company (Ruprecht Hart Weeks & Ricciardulli, LLP, attorneys; Mr. Hart and John W. Gregorek, on the brief).

Thomas M. Mulcahy argued the cause for respondent JAFLO, Inc. (Purcell, Mulcahy, Hawkins, Flanagan & Lawless, LLC, attorneys; Mr. Mulcahy, of counsel and on the brief; Katherine Lyons, on the brief).

The opinion of the court was delivered by

ALVAREZ, J.A.D.

Plaintiffs Edward McGlynn, Jr., individually and as Administrator and as Administrator ad Prosequendum of the Estate of Pamela J. McGlynn, deceased, and as Guardian ad Litem for Melissa McGlynn, a minor and Edward McGlynn III, a minor, and Justin McGlynn,[1] individually, appeal from the summary judgment dismissal of the counts of their complaint alleging negligence by Jersey Central Power and Light Company (JCP&L) and JAFLO, Inc. (collectively referred to as defendants). We affirm.

---

[1] We refer to the parties by their first names for ease of reference.

On September 19, 2003, Pamela, Edward, Jr., and two of their three children were traveling eastbound on a rural road in White Township. A tree fell as their car passed, striking the vehicle and killing Pamela, inflicting significant and permanent injury upon Edward, Jr., and less serious injuries on the two children. As the tree fell, it brought down power lines along the roadside.

Although the tree's location was disputed, Judge Amy O'Connor assumed for purposes of summary judgment that the tree, which stood on privately owned lands, was situated within JCP&L's right-of-way. The tree was also within the right-of-way maintained by the New Jersey Department of Transportation (NJDOT). NJDOT trimmed and removed trees along its right-of-way. When work needed to be performed near utility poles or power lines, NJDOT would contact the utility company that owned the lines, rather than undertaking the work itself.

JCP&L had retained JAFLO to complete "vegetation maintenance" along ninety miles of roadway on a four-year cycle, including the area in which the tree was located.[2] In order to maintain consistent flow of electricity to its nearly one million customers in thirteen counties, JCP&L was obligated to

_____

[2] To meet its commitment to the Board of Public Utilities of New Jersey to reduce vegetation-related outages, JCP&L promulgated "Vegetation Management Specifications."

keep its power lines free of encroaching vegetation, such as trees.

The relevant count of plaintiffs' complaint alleged that defendants' negligence in failing "to properly inspect, and/or maintain the tree, and/or remove the tree" that struck the McGlynn vehicle, was the proximate cause of the resulting tragic injuries. Plaintiffs claimed that JCP&L and its contractor JAFLO were negligent in failing to remove the dead tree, and that their nonfeasance resulted in the harm that they suffered.

Defendants denied liability, asserting that they owed plaintiffs no duty of care. After the parties completed substantial discovery, JCP&L filed a motion for summary judgment. JAFLO filed a cross-motion on parallel grounds. On April 28, 2009, the motions were granted, and the order now under appeal was entered.

In rendering her decision, Judge O'Connor relied upon the factors enunciated in Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1999), concluding that JCP&L "did not have a duty of care to remove vegetation that posed a risk of harm to users of the highway." After applying the Alloway analysis to the claims against JAFLO, the judge reached the same result. Judge O'Connor also weighed in the balance the overall fairness of

imposing a duty of care upon defendants. See <u>Dunphy v. Gregor</u>, 136 <u>N.J.</u> 99, 108 (1994).

On May 27, 2009, plaintiffs unsuccessfully filed for leave to appeal the grants of summary judgment. In the interim, plaintiffs settled their claims against the State and NJDOT, and plaintiffs' counsel actually requested that the trial court remove the matter from the trial list. As of September 12, 2011, the case status was therefore changed to "closed" for administrative purposes. On April 27, 2012, the court entered an order allocating the wrongful death settlement proceeds among plaintiffs.

No stipulation of dismissal was filed, however, until November 15, 2012. The delay was occasioned by the exhaustion of the State's calendar-year-2011 funds earmarked for payment of personal injury settlements. Plaintiffs had an understanding with the State and NJDOT that no stipulation of dismissal would be filed until plaintiffs were paid the settlement proceeds, which did not occur until October 9, 2012.

I

As a result of the delay between the settlement and the filing of the stipulation of dismissal, JAFLO and JCP&L seek dismissal of plaintiffs' appeal as untimely. Under <u>Rule</u> 2:4-1(a), "[a]ppeals from final judgments of courts . . . shall be

taken within 45 days of their entry." On the filing of a motion, and "on a showing of good cause and the absence of prejudice," this Court may extend that appeal window by "a period not exceeding 30 days." R. 2:4-4(a). An appeal "must be accomplished within the stated time," and "[f]ailure to comply effectively forever bars an allegedly aggrieved party from seeking further relief." See Alberti v. Civil Serv. Comm'n, 41 N.J. 147, 154 (1963).

But "[f]or a judgment to be final and therefore appealable as of right, it must dispose of all claims against all parties." Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374, 383 (App. Div.) (internal quotation marks omitted), certif. denied, 209 N.J. 96 (2011). When a trial court enters an order of summary judgment that dismisses some, but not all, parties, the order "is interlocutory rather than final, and leave to appeal [must] be sought." See Yuhas v. Mudge, 129 N.J. Super. 207, 209 (App. Div. 1974). Finally, "[t]he inherent power of the court to modify its own interlocutory orders prior to the entry of final judgment has long . . . been recognized in New Jersey." Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 261 (App. Div. 1987), certif. denied, 110 N.J. 196 (1988).

JAFLO contends that the appeal in this case is untimely. JAFLO argues that the clock for the time to appeal began to run

on September 12, 2011, after plaintiffs settled with the State and NJDOT, and the court marked the matter as closed and removed it from the active list, and not when plaintiff filed the stipulation of dismissal over a year later on November 15, 2012. JAFLO further contends that plaintiffs' notification to the court to cancel the trial date and mark as withdrawn dispositive motions between those parties supports its position that this was a conclusive settlement. Not surprisingly, JCP&L concurs, and adds that the settlement would have been enforceable regardless of whether the stipulation of dismissal was filed. Therefore, JCP&L asserts that, for appeal purposes, the matter really concluded on September 12, 2011.

Plaintiffs counter that, in this case, until the settlement funds were available and the case dismissed with prejudice, further litigation could have ensued. In any event, we agree with plaintiffs that Straus v. Borough of Chatham, 316 N.J. Super. 26 (App. Div. 1998), controls. In that case, a plaintiff sued a municipality, a property owner, and a tenant for injuries sustained resulting from a fall on a sidewalk. Id. at 28. The court granted summary judgment in favor of the property owner and the tenant, but the matter was still open as to the municipality. Ibid. Plaintiff eventually settled with the

municipality, signed a personal release, and filed a stipulation of dismissal seven days later. Id. at 32-33.

Plaintiff appealed the trial court's grant of summary judgment fifty-two days after the settlement and release and forty-five days after the filing of the stipulation of dismissal. We nonetheless found the appeal to be timely. Ibid. The relevant language reads:

> Without any authority, defendants assert that the time to appeal began to run on the date the release was signed, and therefore, the notice of appeal was untimely. . . . In our view, [the date that the stipulation of dismissal was filed] was the date of final judgment. Before that date there was no final judgment since all issues had not been resolved as to all parties.
>
> [Id. at 33 (citation omitted).]

In this case, no final judgment was filed until the stipulation of dismissal was entered. Thus, Straus is controlling.

We think it is also significant that plaintiffs' delay in filing the stipulation resulted from the exhaustion of State resources. It was reasonable for plaintiffs to act cautiously, and delay the filing, until those defendants were able to fund the promised payment. The delay was occasioned by considerations related solely to the settlement with the State, and not from an attempt to manipulate the deadline for filing an appeal.

That the case was marked closed for administrative purposes is simply not dispositive. Cf. In re Mercer Cnty. Prob. Dep't, 109 N.J. Super. 313, 315-16 (App. Div. 1970) (holding that a judge's administrative directive, even in the form of an order, did not constitute an appealable final judgment). The stipulation of dismissal was filed within a reasonable time after the receipt of the funds. The notice of appeal was properly filed, calculated from that date. Accordingly, we do not dismiss the appeal as untimely.

II

On the merits, plaintiffs argue that the motion judge erred in granting summary judgment by ignoring material facts in dispute, and by failing to correctly interpret applicable precedent in defining each defendant's duty to the plaintiffs. We do not agree.

As a threshold question, we conclude that the motion judge properly considered the facts in the light most favorable to plaintiffs, while affording them "all legitimate inferences." See R. 4:46-2(c). We apply the same standard on appeal. Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012). As a matter of law, we agree that defendants did not owe plaintiff a duty of care.

To establish a prima facie case of negligence, an injured plaintiff must demonstrate: (1) a duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages. D'Alessandro v. Hartzel, 422 N.J. Super. 575, 579 (App. Div. 2011). Whether a legal duty exists, as well as the scope of the duty, are questions of law for the court to decide. Ibid.

In determining whether a duty is owed, the first step in the analysis, notions of fairness and public policy must be taken into account. Acuna v. Turkish, 192 N.J. 399, 413-14 (2007), cert. denied, 555 U.S. 813, 129 S. Ct. 44, 172 L. Ed. 2d 22 (2008). As the court said in Acuna, quoting Prosser & Keeton on Torts, Lawyer's Edition § 53, at 359 (W. Page Keeton ed., 5th ed. 1984): "No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." Acuna, supra, 192 N.J. at 414.

An injured party must demonstrate more than the mere foreseeability of harm. Kelly v. Gwinnell, 96 N.J. 538, 544 (1984). A claimant must also establish grounds for a "value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care." Ibid.

Plaintiffs have not established such grounds in this case. The basis for plaintiffs' claim is that they are the third party

10                                                    A-1743-12T3

beneficiaries of defendants' contractual undertakings to keep power lines free from encroaching vegetation, in furtherance of the uninterrupted provision of power to JCP&L customers, and that defendants' failure to remove a dead tree that was not affecting the flow of electricity nonetheless warrants the imposition of such a duty.

It is not disputed that JCP&L had a clear and defined commitment to keep vegetation controlled in order to prevent interruptions in service. To expand that commitment to include maintenance of vegetation for the benefit of passing motorists, where power lines are unaffected, would create an onerous burden without a corresponding benefit where the responsibility already exists, to a greater or lesser extent, on individual property owners and NJDOT.

This is not an instance where, for example, defendants were in the process of negligently removing a dead tree or a tree limb, and a passerby was injured. Nor is it an instance where a power line was damaged, fell onto the roadway, and, thus, created a hazard.

Nor is this a factual scenario such as the one in Carvalho, supra, 132 N.J. at 571-72, 577-78, where a duty was imposed on a construction site engineer for the death of a construction worker employed by a subcontractor. The engineer in Carvalho

oversaw the installation of in-ground utility pipes, was on the work site daily, and directly supervised the "existing conditions and the actual performance of the work undertaken by the workers at the site." Id. at 569-70. In that situation, "there was an overlap of work-progress considerations and work-safety concerns." Id. at 575.

The engineer controlled the work site, a significant factor missing here. Id. at 576. The engineer had the authority to halt the job for safety reasons. Ibid. He had been informed about the instability of the trenches used by workers in installing pipes, as trench walls had collapsed on the site the week prior to the collapse of a trench that led to Carvalho's death. Id. at 576.

The Court found that the engineer's role involved, of necessity, responsibility for the safety and control of the work area, and that he had actual knowledge of site conditions. Id. at 575-76. Therefore, the Court found that a duty of care was owed to the employee of a subcontractor even though the engineer never expressly assumed responsibility for his safety. Id. at 569, 577-78. Considerations of fairness and public policy required the imposition of a duty of care. Id. at 577. The conditions that resulted in the death were known, foreseeable risks. Id. at 573-74. And most importantly, the engineer "had

12

the opportunity and was in a position to foresee and discover the risk of harm and to exercise reasonable care to avert any harm."  Id. at 578.  Those factors are missing here.

The private land owner bears the principal responsibility to exercise due care over trees that might pose a hazard to travelers on an adjoining highway.  See Narsh v. Zirbser Bros., Inc., 111 N.J. Super. 203, 208 (App. Div. 1970).  NJDOT in this case had a right-of-way over the same wooded strip over which JCP&L had its right-of-way, and NJDOT managed the vegetation in that area in order to prevent hazards such as the one in this case.

There was no contractual obligation on JCP&L to do more than to maintain the lines within its designated right-of-way so as to provide uninterrupted service.  Moreover, the obligation to monitor trees over hundreds of miles of roadway for a broad purpose such as the safety of passing motorists would be an overwhelming burden on a private entity.  And here, the property owner had that responsibility, as did NJDOT, a government entity.

JCP&L is a private utility company.  That JCP&L did not remove a dead tree from a stretch of woods, and that the fall had such tragic consequences, was neither foreseeable nor within the scope of its day-to-day activities.

If JCP&L did not have a duty of care, it follows as night the day that JAFLO did not have that responsibility either. We reiterate that this was not an instance where JAFLO, JCP&L's contractor, was negligent while removing a dead tree or tree limbs, or otherwise in the act of maintaining vegetation.

Thus we conclude that no societal goal is advanced by the imposition of a duty to act in this case. See City Check Cashing, Inc. v. Mfrs. Hanover Trust Co., 166 N.J. 49, 59 (2001). Neither defendant assumed a general responsibility to tend to the trees so as to promote highway safety. See Acuna, supra, 192 N.J. at 414. Here, the responsibility fell on the private landowner and NJDOT.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION