# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5119-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.B.,

     Defendant-Appellant,

and

C.W. and T.B.,

     Defendants.

_____

IN THE MATTER OF X.W.,
XY.W., and N.B.,

     Minors.

_____

     Submitted April 27, 2020 – Decided June 4, 2020

     Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-0322-14.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Laura M. Kalik, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy Melissa Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor N.B. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant T.B. (Teri)[1] appeals from a Family Part order finding she abused or neglected her four-year-old daughter N.B. (Nina) by causing Nina's physical condition to become impaired as a result of an unreasonable infliction of excessive corporal punishment. Having considered Teri's arguments and the

---

[1] We use initials and pseudonyms to refer to the parties, children, and their friends for ease of reference and to prevent disclosure of information and records excluded from public access under Rule 1:38-3(d)(12).

A-5119-17T1

record, we dismiss the appeal because it was not timely filed in accordance with Rule 2:4-2(a).

I.

In our discussion of the pertinent facts, we describe the evidence related to the Division's claim Teri abused or neglected Nina, and we detail the somewhat complicated procedural history of the proceedings involving Teri and the fathers of her four children, and the court's actions addressing the abuse or neglect, Title Nine, and guardianship issues presented. The procedural history provides context for the Division's and Nina's Law Guardian's claim the appeal should be dismissed as untimely filed. We summarize the evidence concerning the allegation Teri abused or neglected Nina in March 2016 because, although we dismiss the appeal as untimely, we also address the merits of Teri's challenge to the court's fact-finding order from which her appeal is taken.

The New Jersey Division of Child Protection and Permanency (the Division) received eight referrals alleging neglect and physical abuse of Nina during the two years following her birth in 2011. In October 2013, the Division substantiated an allegation Teri physically abused Nina; and the Division

conducted a Dodd removal of Nina,[2] granted the Division care, custody, and supervision of the child, and continued to monitor Teri and Nina in a Title Nine proceeding under Docket No. FN-04-322-14 ("the Title Nine proceeding" or "the original Title Nine proceeding").

Three months later, Teri gave birth to a son, X.W. (Xander). The Division conducted a Dodd removal of Xander based on Teri's history of physically abusing Nina, and Xander's father, C.W.'s (Carl) criminal history. On February 14, 2014, the court entered an order in the Title Nine proceeding awarding the Division care, custody, and supervision of Xander.

Following a fact-finding hearing, the court entered a February 19, 2014 order finding Teri abused or neglected Nina "by allow[ing] the child . . . to be inflicted with numerous non-accidental injuries and plac[ing] the child at significant risk of harm." Teri pleaded guilty to third-degree endangering the welfare of a child, Nina, and she was sentenced to serve 364 days as a condition of a five-year probationary term.

---

[2] A "Dodd removal" is an emergency removal of a child from the custody of a parent without a court order, as authorized by N.J.S.A. 9:6-8.29, a provision included within the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82.

A-5119-17T1

In January 2015, Teri and Carl had a second child, Xy.W. (Xena). The Division filed a third amended complaint in the Title Nine proceeding, and the court entered an order granting the Division care, custody, and supervision of Xena.

By October 2014, T.B. (Tom) was identified as Nina's father, and he was added as a party to the Title Nine proceeding. In January 2015, the court granted Tom custody of Nina in a separate non-dissolution proceeding, and it allowed Teri supervised parenting time with Nina. As a result, Tom and Nina were dismissed from the Title Nine proceeding on January 26, 2015, and the case continued as to only Teri, Carl, Xander, and Xena. In June or July, 2015, however, the Division removed Nina from Tom's custody, and the court granted the Division care, custody, and supervision of Nina in a new Title Nine case. The following month, the court consolidated the new Title Nine case with the original Title Nine proceeding.[3]

---

[3] The parties agree that in June or July of 2015, Nina was removed from Tom's custody, and the court awarded the Division care, custody, and supervision of Nina. The record on appeal does not include the orders terminating Tom's custody and awarding custody to the Division. The Division states the order removing Nina from Tom's custody and awarding custody to the Division was entered under Docket No. FN-04-155-16. As noted, in an August 25, 2015 order, the court consolidated the action under Docket No. FN-04-155-16 with the Title Nine proceeding under Docket No. FN-04-322-14.

In November 2015, the court ordered Teri's reunification with her three children, and, by January 2016, Teri had physical and legal custody of the children. The court entered a January 26, 2016 order continuing the children in the Division's care and supervision; continuing their legal and physical custody with Teri; directing that Teri and Carl comply with services; and allowing Carl and Tom visitation with their respective children.

The March 1, 2016 Referral and Subsequent Fact-Finding Hearing

On March 1, 2016, the Division received a referral from the Mommy and Me program where Teri resided with the children. The referral alleged Nina had scratch-marks on her face. Three days later, in its sixth amended complaint in the Title Nine proceeding, the Division alleged Teri abused or neglected Nina by causing physical injury and harm through excessive corporal punishment.

At the hearing on the abuse or neglect allegation, Division intake worker Lashonda Rodriguez testified about the Division's receipt, on Tuesday, March 1, 2016, of a referral that Nina "had some deep scratch[-]marks on her face." The next day, police located Teri and Nina at Teri's friend Emma's home. Rodriguez observed two curved linear marks down the center of Nina's nose that extended to each side of her nose. Rodriguez also saw similar curved marks near each of Nina's eyes and bruising under her eyes.

A-5119-17T1

Teri told Rodriguez she left the Mommy and Me shelter on Sunday, February 28, 2016, with Nina and her younger siblings, Xander and Xena, and they went to Emma's home. Teri said she left Nina and Xander at Emma's home, and she departed with Xena because she had an appointment at noon the following day. Teri reported she and Xena "stayed somewhere" on Sunday evening and, at about 8:00 p.m. on Tuesday, March 1, they returned to Emma's home. According to Teri, it was not until she returned to Emma's home that she first saw the injuries to Nina's face.

Teri reported Emma said the marks on Nina's face were inflicted on February 28, 2016, when Emma took the children to Chuck E. Cheese.[4] Teri told Rodriguez that Emma said, "a kid scratched [Nina] at Chuck E. Cheese." Teri told Rodriguez that after Emma offered the explanation, she decided to leave "it alone."

Rodriguez also spoke to Emma, who offered a different version of what occurred. Emma said Teri brought the children to her home on either Sunday or Monday, but they did not stay overnight with her. She reported she saw the

---

[4] Chuck E. Cheese is a children's entertainment venue that, according to its advertisements, includes a "video arcade with interactive games," "a kids menu including . . . pizza and an all-you-can-eat salad bar," and "performances by . . . Chuck E." https://www.chuckecheese.com/ (last visited May 15, 2020).

marks on Nina's face after the children were playing in another room in her home before the children were taken to Chuck E. Cheese.

Kevin Riley, a Division Intake worker, interviewed Nina on March 1, 2016, at Emma's home. He observed what he described as "long fresh curl shape scratches on the bridge of her nose," similar marks near her eyes, and bruises under both her eyes. Photos he took of Nina's injuries were admitted in evidence.

Nina first told Riley the injuries to her face were caused by a boy hitting her with a toy truck. Riley testified Nina could not name the boy, and she appeared anxious and teary-eyed when he asked her to do so. Nina would not demonstrate how the boy hit her with the truck, and she denied she was injured at either Chuck E. Cheese or Emma's home.

Following Rodriguez's and Riley's testimony, Teri consented to an identified surrender of her parental rights of Nina to Nina's resource parent. The court accepted the identified surrender, and the parties stipulated to the admission into evidence of a redacted version of Dr. Monique Higginbotham's report, limited to her summary of the statements made by Nina concerning the injuries to her face and the manner in which they were inflicted.

The report shows Nina told Dr. Higginbotham she had "boo-boos" on her nose and each of her eyes. Nina first said a boy hit her, but after Dr. Higginbotham explained it was important to tell doctors the truth about "boo-boos" so "doctor[s] could help kids get better and help kids stay safe," Nina said, "I think my [m]ommy [did] this to my nose." When Dr. Higginbotham asked "how [m]ommy did that to her nose," Nina explained Teri "hit [her nose] with the, like a circle thing," and "a circle thing, for my mom hit my nose with it." Nina described the "circle thing" as a "black thing" that was used "for hitting."

Dr. Higginbotham asked Nina to draw a picture of the "circle thing," and Nina drew "an oval shape on the paper" and said, "Mommy hit me with it." Nina also demonstrated how her mother held the circle thing when she hit Nina with it, making a fist with one of her hands and bringing "her partially clenched hand to her face." Nina said her mother hit her "[be]cause [she] was mad at me."

The court found the Division established by a preponderance of the evidence that Teri caused the marks and bruises on Nina's face by inflicting excessive corporal punishment. The court recognized the conflicting version of events reported by Teri, Emma, and Nina, but it credited Nina's statements to Dr. Higginbotham about Teri. The court also found Nina's statements to Dr. Higginbotham were corroborated by the testimony and evidence, including

Riley's photos showing Nina's injuries, which are consistent with Nina's drawing and description of the implement, "the circle thing," she said Teri used to hit her face.

The June 6, 2016 Fact-Finding and Dispositional Orders

The court entered a June 6, 2016 order finding Teri abused or neglected Nina by causing her physical condition to be impaired by unreasonably inflicting excessive corporal punishment. The court also held a dispositional hearing on June 6, 2016, and it entered an order continuing the care, custody, and supervision of Nina, Xander, and Xena with the Division. The court ordered Teri and Carl to continue to comply with services, and it allowed Teri and Carl visitation with Xander and Xena.

The order also accepted Teri's voluntary identified surrender of parental rights to Nina "with the understanding that if the named person [to whom the surrender was made] does not adopt, the surrender is void." The order directed the Division to keep Teri "informed, on at least a quarterly basis until the adoption is finalized, as to the status of the planned adoption."

Proceedings Following Entry of the June 6, 2016 Dispositional Order

On October 4, 2016, the Division requested the court bifurcate the claims involving Teri and Carl, and their children Xander and Xena, from the claims

involving Teri and Tom, and their child, Nina. More particularly, the Division requested the claims involving Teri, Tom, and Nina remain in the original Title Nine proceeding, and the claims involving Teri and Carl and their children proceed separately in a guardianship proceeding. With the consent of all parties, the court granted the Division's request.

The Court's Order Terminating the Title Nine Proceeding As to Teri

The court entered an October 4, 2016 order dismissing the claims involving Xander and Xena from the Title Nine proceeding. The order directed the claims would be addressed in a separate guardianship proceeding. The order also dismissed the Title Nine proceeding against Teri because she had surrendered her parental rights to Nina. The order, however, continued the Title Nine proceeding against Tom.[5]

Two months later, on January 24, 2017, the court terminated the Title Nine proceeding as to the only remaining defendant, Tom. The court entered an order

---

[5] Nina was not adopted until February 2018. Thus, the October 4, 2016 order dismissing the Title Nine proceeding because Teri surrendered her parental rights to Nina appears inconsistent with the court's June 6, 2016 order providing Teri's identified surrender of her parental rights is void if Nina was not adopted by the person to whom Nina made the surrender. Nonetheless, the October 4, 2016 order terminated the Title Nine proceeding against Teri, at least with regard to the disposition of the abuse or neglect finding and Teri's parental responsibilities for Nina. Teri does not appeal from the October 4, 2016 order.

terminating the litigation because the Division filed a guardianship complaint seeking termination of Tom's parental rights to Nina. Proceedings involving Tom and Nina next ensued before the court in a separate guardianship matter the following month. As a result, the January 24, 2017 order terminated the original Title Nine proceeding as to all parties and all claims.

The Subsequent Proceedings

A few weeks later, Teri had her fourth child, J.B. (Jon). The Division also withdrew its guardianship complaint for Xander and Xena, and it allowed Jon to remain in Teri's custody under a Safety Protection Plan. After some discussion about the appropriate docket number that should be used for the provision of services under Title Nine for Teri, Carl, Xander, and Xena, the court dismissed the guardianship proceeding and opted to reopen, and utilize the docket number in, the original Title Nine proceeding that had been dismissed by the court's January 24, 2017 order.

The Division conducted a Dodd removal of Jon from Teri's custody based on a referral Teri abused or neglected Jon by throwing him to the floor. The Division filed a new Title Nine case under a different docket number against Teri concerning the alleged abuse or neglect of Jon. Separate litigation

12

concerning Xander and Xena continued against Teri and Carl under the reinstated original Title Nine proceeding docket number.

In a separate guardianship proceeding, on June 1, 2017, Tom surrendered his parental rights to Nina. More than eight months later, in February 2018, Nina was adopted.

On May 31, 2018, following Teri's reunification with Xander, Xena, and Jon, the court terminated the litigation involving Xander and Xena that had been reinstated in February 2017 under the docket number from the original Title Nine proceeding.[6] Less than forty-five days later, on July 11, 2018, Teri filed the pending appeal from the court's June 6, 2016 order finding she abused or neglected Nina.

On appeal, Teri presents the following arguments for our consideration:

> THE TRIAL COURT'S DECISION MUST BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT [TERI] ABUSED OR NEGLECTED [NINA][.]
>
> A. The Division Failed to Prove by a Preponderance of the Evidence that [Teri] Inflicted Excessive Corporal Punishment on [Nina][.]

---

[6] The record is unclear as to the court's disposition of the separate Title Nine proceeding involving Jon. That disposition, however, is not relevant to the disposition of this appeal.

13

B. The Trial Court Improperly Shifted the Burden of Proof to [Teri][.]

C. The Trial Court Improperly Relied Upon Incompetent Hearsay Testimony and Uncorroborated Out-of-Court Statements[.]

## II.

During the pendency of this appeal, the Division moved for dismissal, claiming the appeal was not filed within forty-five days of the court's final order as required under Rule 2:4-1(a). We granted the Division's motion but later, on Teri's motion for reconsideration, reinstated the appeal with the caveat the Division could renew its argument before the merits panel.

The Division, now joined by Nina's Law Guardian, renews its claim the appeal should be dismissed because it was not timely filed. More particularly, the Division and Law Guardian claim that the June 6, 2016 dispositional order was a final order from which Teri had a right to appeal pursuant to N.J.S.A. 9:6-8.70, and that she failed to timely file her appeal within forty-five days of that order's entry. In the alternative, they claim the October 4, 2016 order dismissing Teri from the Title Nine proceeding involving Nina and bifurcating the claims involving Nina from those involving Xander and Xena constituted a final order in the Title Nine proceeding. Last, they contend, again in the alternative, that Tom's June 1, 2017 voluntary surrender of his parental rights to Nina in the

14

guardianship proceeding effectively ended all of the litigation related to Nina and thereby triggered the Rule 2:4-1(a) forty-five-day deadline for the filing of Teri's appeal. They argue Teri did not file her appeal until July 11, 2018, more than twenty-three months after entry of the June 6, 2016 dispositional order, and more than a year after the June 1, 2017 guardianship order, and, therefore, the appeal is untimely.

Teri asserts her appeal is timely filed. She contends the June 6, 2016 dispositional order is an interlocutory order because it did not resolve all issues as to all parties. She asserts that the Title Nine proceeding continued long after entry of the dispositional order, the October 4, 2016 order, and Tom's June 1, 2017 voluntary surrender of his parental rights, and that a final order terminating the Title Nine proceeding as to all parties and all issues was not entered until May 31, 2018. She contends her appeal, which was filed on July 11, 2018, is therefore timely filed within Rule 2:4-1(a)'s forty-five-day deadline.

Parties may appeal as of right "from final judgments" in the Family Part. R. 2:2-3(a). On the other hand, an appeal from a trial court's interlocutory order abides the Appellate Division's grant of leave to appeal in accordance with Rule 2:2-4. Our Supreme Court has observed that "[w]hether a trial court order is final or interlocutory has bedeviled courts and attorneys for decades," Silviera-

Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 136 (2016), but "[g]enerally, an order is considered final if it disposes of all issues as to all parties," ibid. For example, "in a multi-party, multi-issue case, an order granting summary judgment, dismissing all claims against one of several defendants, is not a final order subject to appeal as of right until all claims against the remaining defendants have been resolved by motion or entry of a judgment following a trial." Ibid. (citing McGlynn v. State, 434 N.J. Super. 23, 29 (App. Div. 2014)); see also N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 164 (App. Div. 2003).

N.J.S.A. 9:6-8.70 provides for appeals as of right from two types of "final" orders in Title Nine cases. The statute authorizes appeals as of right from "any final order of disposition," as well as from "any other final order made pursuant to" Title Nine. N.J.S.A. 9:6-8.70. Thus, the Legislature distinguished "final order[s]of disposition" from all "other final order[s]" in Title Nine cases, and it expressly authorized a right to appeal from both. We must give effect to this distinction or we will run afoul of the fundamental principle that a statute should not be interpreted in a manner that renders "any part of [it] inoperative, superfluous, or meaningless." Burgos v. State, 222 N.J. 175, 203 (2015) (quoting Innes v. Innes, 117 N.J. 496, 509 (1990)).

Teri's claim she did not have a right to appeal the June 6, 2016 dispositional order because it did not resolve all claims as to all parties in the Title Nine proceeding ignores N.J.S.A. 9:6-8.70's distinction between final orders of disposition following abuse or neglect findings and other final orders in Title Nine cases. If, as Teri contends, a litigant in a Title Nine case must await entry of a final order disposing of all claims as to all parties before having a right to challenge a dispositional order entered after a finding of abuse or neglect, then N.J.S.A. 9:6-8.70's separate grant of a right to appeal from a final dispositional order would be meaningless and superfluous. See ibid. Stated differently, if the Legislature intended that dispositional orders entered based on findings of abuse or neglect could be appealed as of right only after final resolution of the remaining issues as to all remaining parties, then it would not have expressly provided for a direct right of appeal from final dispositional orders entered following findings of abuse or neglect.

Teri relies on L.A., where we considered an appeal from an order finding abuse or neglect, and we noted some courts had incorrectly assumed a fact-finding order constitutes a final order. 357 N.J. Super. at 164-65. We found the erroneous assumption "may emanate from an appreciation of the impact such a finding may have on a family and permanency planning proposed by" the

17

Division and from a recognition "dispositional hearings do not proceed as close in time to the fact-finding hearing as prescribed by the Legislature." Id. at 165. We held "an order finding that a child has been abused or neglected [was] an interlocutory order" because it provided for further disposition proceedings. Id. at 164, 166; accord N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 618 (App. Div. 2010).

In L.A. the defendant did not appeal from a dispositional order entered following an abuse or neglect finding. Instead, the defendant appealed solely from the abuse or neglect finding. 357 N.J. Super. at 163-64. N.J.S.A. 9:6-8.70 does not provide for a direct appeal from an order finding abuse or neglect, and we have determined an abuse or neglect finding does not otherwise constitute a "final order" under N.J.S.A. 9:6-8.70. Id. at 164. We interpreted the term "final order" in N.J.S.A. 9:6-8.70 "in its ordinary meaning as an order which disposes of 'all issues as to all parties.'" Ibid. (quoting Hudson v. Hudson, 36 N.J. 549, 553 (1962)). In L.A., however, we were not required to address or consider a defendants' right to appeal from "final order[s] of disposition" as authorized by N.J.S.A. 9:6-8.70. See ibid.; see also N.J. Div. of Youth & Family Servs. v. L.W., 435 N.J. Super. 189, 194 (App. Div. 2014) (relying on L.A. and concluding, without consideration of the distinction between the two types of

final orders from which appeals of right may be taken pursuant to N.J.S.A. 9:6-8.70, that a "final dispositional order" entered after an abuse or neglect finding was not a "final order" because "the Title Nine action remained open, further services were ordered and the children were not returned to" the defendant).

For each of the foregoing reasons, we are convinced N.J.S.A. 9:6-8.70 authorizes a direct appeal from "final order[s] of disposition" in Title Nine abuse or neglect cases even where the final order of disposition does not resolve all issues as to all parties in the litigation. We therefore reject Teri's argument she first had a right to appeal from the June 6, 2016 order finding she abused and neglected Nina, and the June 6, 2016 dispositional order based on the abuse or neglect finding, when, twenty-three months later, the court finally terminated the Title Nine proceeding by dismissing all claims related to Nina, Carl, Xander and Xena. Her argument is erroneously based on that portion of N.J.S.A. 9:6-8.70 permitting direct appeals from "final orders." Her right to appeal accrued based on the court's entry of a "final order of disposition." N.J.S.A. 9:6-8.70.

We are not persuaded, however, the June 6, 2016 dispositional order constituted a "final order of disposition" under N.J.S.A. 9:6-8.70. The June 6, 2016 order included a contingency. The order reflected the court's acceptance of Teri's voluntary identified surrender of her parental rights to Nina as its

19

disposition of its abuse or neglect finding, but the order also provided that Teri's voluntary surrender was void if the individual to whom she surrendered her parental rights later decided not to adopt Nina. Additionally, the dispositional order required Teri be advised of the progress in the adoption proceedings, presumably to permit her to take appropriate action concerning the disposition in the event the anticipated adoption did not take place. Under these circumstances, we cannot conclude the June 6, 2016 order was a "final order of disposition," N.J.S.A. 9:6-8.70, and therefore Teri was not required to file her appeal challenging the June 6, 2016 fact-finding order within forty-five days of the dispositional order entered the same day. See, e.g. Winterberg v. Lupo, 300 N.J. Super. 125, 132-33 (App. Div. 1997) (finding it error for the trial judge to view as final a portion of a child support order when the determination of the amount of child support was contingent pending the outcome of the underlying custody issue).

In contrast, although not labeled a dispositional order, the court's October 4, 2016 order finally disposed of the abuse or neglect finding and all other Title Nine proceedings concerning Teri and Nina. Apparently no longer concerned about whether Teri's voluntary identified surrender might become void, the October 4, 2016 order "dismissed" Teri from the Title Nine proceeding "as she

surrendered her parental rights to" Nina. The October 4, 2016 order could not have constituted a more final disposition of the court's finding Teri abused or neglected Nina—the court dismissed Teri from the Title Nine proceeding.[7] The Title Nine proceeding continued only as to Tom, but any later disposition concerning Tom could not constitute a final order of disposition based on the June 6, 2016 abuse or neglect finding because the Division had not alleged, and the court never found, Tom abused or neglected Nina in the Title Nine proceeding.

Teri had a direct right of appeal from the October 4, 2016 order, N.J.S.A. 9:6-8.70, but she did not file her appeal within forty-five days as required by Rule 2:4-1(a).[8] The deadline for the filing of her appeal was November 29,

---

[7] As previously noted, the October 4, 2016 order dismissed the Title Nine proceeding as to Teri's other children at that time, Xander and Xena. The order dismissed the proceeding as to those children because there was a pending guardianship case concerning them.

[8] We also observe the court entered a January 24, 2017 order, terminating the litigation in the original Title Nine proceeding as to the sole remaining defendant, Tom. The order ended the proceeding as to all issues and all parties, but Teri did not file her appeal until almost eighteen months later. Thus, even accepting Teri's argument she could not appeal from the June 6, 2016 fact-finding order until the Title Nine proceeding was ended as to all parties and all issues, she failed to file her appeal within forty-five days of the entry of the January 24, 2017 order. Teri offers no legal support for the proposition that the court's subsequent decision to use the docket number assigned to the original

2016, but she did not file her appeal until July 11, 2018, almost twenty months late.

Teri failed to file the appeal within the deadline imposed by Rule 2:4-1(a). Rule 2:4-4(a) permits a maximum thirty-day extension of time, but only if the appellant actually files the notice of appeal "within the time as extended." Lombardi v. Masso, 207 N.J. 517, 540-41 (2011). That is not the case here. Where the appeal is untimely, we lack jurisdiction to decide the merits of the appeal. Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 97 n.4 (App. Div. 2014) (quoting In re Hill, 241 N.J. Super. 367, 372 (App. Div. 1990)). We are therefore constrained to dismiss Teri's appeal as untimely.[9]

---

Title Nine proceeding for the Title Nine case that followed the termination of Xander's and Xena's guardianship proceeding reinstated the original Title Nine proceeding as to Teri, Tom, and Nina.

[9] Our conclusion Teri's appeal must be dismissed as untimely renders it unnecessary to engage in an extensive discussion of the Division's and Law Guardian's argument the appeal should be dismissed as moot because in 2014 the court made a prior finding Teri abused or neglected Nina. Given the serious consequences attendant to any abuse or neglect finding, see N.S., 412 N.J. Super. at 619-20 (explaining the numerous serious consequences that befall a parent from an abuse or neglect finding), Teri may "still suffer[] from the adverse consequences" from the court's June 6, 2016 fact-finding order, and, therefore, her appeal from the order "is not moot," N.J. Div. of Youth & Family Servs. v. G.M., 398 N.J. Super. 21, 51 (App. Div. 2008).

Although we dismiss the appeal because it is untimely, we also note we would otherwise affirm the court's order finding Teri abused or neglected Nina. The court's findings are supported by substantial credible evidence, and the Division established by a preponderance of the evidence Teri abused or neglected Nina by causing the four-year-old-child's physical condition to become impaired by unreasonably inflicting excessive corporal punishment.

Teri claims the court erred because there was insufficient evidence supporting a finding she abused or neglected Nina. She asserts the court incorrectly relied on hearsay testimony to support its fact findings. Teri also argues the court improperly shifted the burden of proof to her to rebut a presumption she inflicted harm on Nina.

"We have a strictly limited standard of review from the fact-findings of the Family Part judge." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010); N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 505 (App. Div. 2016). We defer to the factual findings of a family court "because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand," "it has a feel of the case that can never be realized by a review of the cold record," and it

has "special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (internal citations omitted).

Accordingly, we will "not disturb a family court's abuse or neglect findings as long as they are 'supported by adequate, substantial, and credible evidence in the record.'" N.T., 445 N.J. Super. at 505 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)). Family court decisions will be upheld, "unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'" N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). However, no deference is owed to the trial court's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The Division bears the burden of proving by a preponderance of the evidence that the defendant committed abuse or neglect. N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 178-79 (2014) (citing N.J.S.A. 9:6-8.46(b)). A child may be abused or neglected by inflicting excessive corporal

punishment. See N.J.S.A. 9:6-8.21(c)(4)(b). The statute defines an abused or neglected child, in relevant part, as:

> a child less than 18 years of age whose . . . physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment . . . .
>
> [N.J.S.A. 9:6-8.21(c) (emphasis added).]

The phrase "excessive corporal punishment" is not defined by statute. N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 511 (App. Div. 2010). Although "a parent may inflict moderate correction such as is reasonable under the circumstances of a case," id. at 510 (quoting State v. T.C., 347 N.J. Super. 219, 240 (App. Div. 2002)), punishment is excessive when it exceeds "what is proper or reasonable," id. at 511. The court's determination must focus on the harm caused to the child, not on the parent's intent. M.C. III, 201 N.J. at 344; K.A., 413 N.J. Super. at 511.

Some injuries to a child are sufficiently egregious to warrant a per se finding of excessive corporal punishment. See K.A., 413 N.J. Super. at 511-12. These injuries typically require "medical intervention," such as "a fracture of a

limb, or a serious laceration." Id. at 511. Where, as here, a per se injury is not present, the court must scrutinize the surrounding circumstances. See N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). Consideration must be given to the "nature and extent of the injuries" and the "instrumentalities used to inflict them." N.J. Div. of Youth & Family Servs. v. S.H., 439 N.J. Super. 137, 146 (App. Div. 2015). Additionally, courts should consider factors such as "(1) the reasons underlying [the defendant's] actions; (2) the isolation of the incident; and (3) the trying circumstances which [the defendant] was undergoing . . . ." K.A., 413 N.J. Super. at 512. The age of the child is also an important factor. "[F]or example, one ought not assume that what may be 'excessive' corporal punishment for a younger child must also constitute unreasonable infliction of harm, or excessive corporal punishment in another setting involving an older child." P.W.R., 205 N.J. at 33.

Here, the testimony and evidence, including Riley's photos of Nina's face, reveal injuries supporting the court's finding they were inflicted by excessive corporal punishment. Nina had bruising under her eyes, and the distinctive curved lines on Nina's nose and near her eyes revealed breaks of the skin and scabbing. Moreover, and more importantly, the lines and their shapes are consistent with the use of an implement—the "circle thing"—to inflict the

injuries. In other words, the injuries amply support the court's finding four-year-old Nina was struck in the face and around her eyes with an implement. Moreover, Nina's statements to Dr. Higginbotham, which the court found credible, support a finding Teri held the implement in a clenched fist and struck Nina with it because Teri was "mad" at Nina.

Teri claims the court erred by assuming Nina's injuries were the product of excessive corporal punishment, but Nina's statements provide direct evidence they were. Striking a four-year-old child in the face with an implement, and causing the bruises and marks Nina suffered, simply because a parent is "mad" represents a paradigm of abuse or neglect through the infliction of excessive corporal punishment. See, e.g., M.C. III, 201 N.J. at 334, 345 (finding abuse or neglect where a father grabbed, choked, and punched the children, disregarding the substantial probability injury would result); S.H., 439 N.J. Super. at 147-50 (finding a mother's use of a golf club and her teeth, causing a contusion and bite marks, was excessive corporal punishment); N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J. Super. 322, 340 (App. Div. 2007) (finding a mother's use of a belt to hit the child in the face, injuring his eye, was excessive corporal punishment).

Teri does not dispute the nature or extent of Nina's injuries. Instead, she argues the evidence was insufficient to support the court's determination she inflicted them. She argues there was conflicting evidence as to when the injuries were inflicted; Nina reported different versions of what occurred; there was no evidence the injuries were intentionally inflicted; and the court ignored evidence that revealed periods of time Nina was not in Teri's care when the injuries could have been inflicted. We reject those arguments because they ignore the record. The trial court noted the conflicting evidence concerning the circumstances under which the injuries were inflicted, but it sifted through the evidence, found Rodriguez and Riley credible, and determined Nina's statements to Dr. Higginbotham relayed the most credible version of what occurred. We defer to the court's credibility determinations and findings of fact because they are supported by substantial credible record evidence. See N.T., 445 N.J. Super. at 505.

The trial court did not err by relying on Nina's statements because they were corroborated, and therefore admissible, and they constitute substantive evidence supporting the court's findings. Under Title Nine, a child's hearsay out-of-court statements relating to abuse or neglect allegations shall be admissible "provided, however, that no such statement, if uncorroborated, shall

be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4). "The corroborative evidence need not relate directly to the alleged abuser, it need only provide support for the out-of-court statements." N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002). Physical evidence of assault is certainly corroborative, see ibid., and Rodriguez's and Riley's observations of Nina's injuries, and the photographs of the bruises and distinctive curved marks on Nina's face, sufficiently corroborate her statements that her mother struck her with "the circle thing."

Teri's claim the court improperly shifted the burden of proof to her is also not supported by the record. We discern no action or finding by the trial court showing it shifted any burden to Teri. This was not a case where the court found the burden shifted to Teri to "provide evidence to establish [her] non-culpability" because the young victim could not "inculpate the abuser" or it was "difficult to marshal direct evidence of parental abuse [or] neglect because of the closed environment in which the abuse" occurred. N.J. Div. of Youth & Family Servs., v. S.S., 275 N.J. Super. 173, 179 (App. Div. 1994); see also In re D.T., 229 N.J. Super. 509, 517 (App. Div. 1988).

Here, the court found the Division sustained its burden of proving Teri abused or neglected Nina based on the evidence of Nina's injuries and Nina's

statements that Teri, in anger, struck her in the face with an implement and caused her injuries. Where "there is substantial credible evidence in the record to support the trial court's findings, we will not disturb those findings." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010). Moreover, the court made rational inferences "grounded in a preponderance of probabilities according to common experience" derived from the credible evidence. N.S., 412 N.J. Super. at 615. Because the court's findings are supported by substantial credible evidence, we discern no basis to reverse the court's findings and conclusions.

Any argument asserted by Teri we have not directly addressed is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION