**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4064-23

JUANA GUZMAN-MARTINEZ,

    Plaintiff-Appellant,

v.

CITY OF PLAINFIELD,

    Defendant/Third-Party
    Plaintiff-Respondent,

and

CITY OF PLAINFIELD
DEPARTMENT OF PUBLIC
WORKS,

    Defendant-Respondent,

v.

PUBLIC SERVICE ENTERPRISE
GROUP D/B/A PSE&G,

    Third-Party Defendant.

_____

Submitted September 11, 2025 – Decided October 27, 2025

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3137-21.

Smith & Schwartzstein, LLC, attorneys for appellant (Andrew B. Smith, on the briefs).

Rainone Coughlin Minchello, LLC, attorneys for respondents (Thomas Schoendorf, of counsel and on the brief).

PER CURIAM

Plaintiff Juana Guzman-Martinez appeals a May 30, 2024 order dismissing plaintiff's complaint on summary judgment pursuant to the New Jersey Tort Claims Act (TCA)[1], along with an August 9, 2024 order denying plaintiff's motion for reconsideration.

In a municipal parking lot owned and maintained by defendants, plaintiff tripped over a wire inside a pothole and suffered injury. The trial court initially denied defendants' motion for summary judgment but granted it upon reconsideration. Analyzing N.J.S.A. 59:4-2, the trial court found defendants had no actual or constructive notice of the pothole and that defendants' conduct was not palpably unreasonable. The court then denied plaintiff's motion for reconsideration. We affirm.

---

[1] N.J.S.A. 59:1-1 to 12-3.

2                                                                              A-4064-23

I.

A.

We obtain the facts from the summary judgment record, viewed in the light most favorable to plaintiff, the non-moving party. Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021).

On November 25, 2020, plaintiff tripped and fell while traversing Municipal Lot No. 9 (the lot), a permit-restricted parking lot. The lot was owned by the Town of Plainfield and maintained by the Plainfield Department of Public Works (DPW) (collectively, the municipal defendants, or defendants). Plaintiff had been walking to her car in the early morning when she tripped on a wire either just outside or within a pothole measuring approximately ten feet in length and five feet in width. The pothole varied in depth from three quarters of an inch to two inches. The pothole and wire were buried under snow, which in turn was covered in paper, leaves, and garbage. As a result of the fall, plaintiff suffered a left foot fracture which required surgery. At her deposition, plaintiff testified that she did not notice the wire or the pothole on the two prior occasions she had been in the parking lot.

After the accident, plaintiff's daughter took photos of the lot. Plaintiff was not present when the photos were taken, and the photos were not

3

timestamped. At her deposition, plaintiff circled one of the photos to mark the pothole's location. However, the record before us contains no photos showing plaintiff's mark, nor does it contain photos which predate the accident.

At his deposition, John Louise, DPW's superintendent during the relevant time, testified about the department's process for handling property maintenance complaints about city property. Complaints were recorded in written form and organized by calendar year.[2] After a search, Louise found no DPW complaints about the lot condition in 2020. He further testified that he was unaware of any complaints regarding snow removal or potholes in the lot on or near November 25, 2020. Additionally, he was unaware of any records which would show that the DPW plowed snow from the lot prior to the accident.

In August 2020, third-party defendant Public Service Enterprise Group (PSE&G) installed a new utility pole adjacent to the lot. Louise also testified that utility companies, including PSE&G, do not notify DPW when they install new poles. There is nothing in the record which shows that defendants' employees were present in the lot at any time during the pole installation.

---

[2] Plaintiff states that DPW's complaint records were never produced "despite repeated requests[.]" Our review of the record revealed no orders of the motion court granting or denying plaintiff relief based on defendants' failure to produce the complaint records.

A-4064-23

Plaintiff's expert, Dr. Donna Ryduchowski, P.E., issued an expert report in which she stated:

> The asphalt pavement at the parking lot was observed as heavily deteriorated, with numerous cracks and potholes at intermittent locations (Photos 5, 6).[3] There was a pothole of irregular shape approximately up to 5ft. wide and up to 10 ft. long in the parking lot pavement that the plaintiff identified as the location of her accident (Photos 7 and 8). The pothole, partially filled with loose gravel at unknown time, was of uneven depths that varied approximately from 3/4 inch to 2 inches below the pavement surface (Photos 9, 10 and 11). The photographs of the accident site on or shortly after the fall provided by [p]laintiff show that the site was in a similar condition at the time of the fall, minus the snow and debris . . . .

Dr. Ryduchowski opined that:

> It may be <u>assumed</u> that the asphalt pavement's deterioration, which resulted in the potholes formation at the [lot], was due to loads impacted by the parking lot patrons' vehicles traffic over a period of years. In addition, poor design, construction practice and materials quality used in the past for the parking lot pavement construction <u>might possibly have been contributing factors</u> to the asphalt deterioration resulting in the potholes formation. This condition was there long before the accident and was noticeable by simple observation, and [it] should have been addressed by the City of Plainfield. Finally, <u>it can be further assumed</u> that no successful effort has been made by the property owner, the City of Plainfield, to properly

---

[3] The photos referenced in the Dr. Ryduchowski's expert report are not contained in the record before us.

A-4064-23

repair or replace the damaged, filled with potholes, deteriorated asphalt pavement.

[(Emphasis added).]

In her certification, Dr. Ryduchowski stated that "the 'heavily deteriorated' pavement did not happen overnight. A pothole of that size would have been formed and/or made visible for years prior to the accident at issue here."

B.

Plaintiff sued defendants on September 10, 2021. Plainfield answered and filed a third-party complaint against PSE&G. Plaintiff amended her complaint in April 2022, alleging that defendants' and PSE&G's negligent maintenance, cleaning, barricading, and posting of warnings caused plaintiff to be injured. The municipal defendants, along with PSE&G, moved for summary judgment on February 15, 2024. On March 21, the trial court granted summary judgment dismissing PSE&G, but denied the motion as to the municipal defendants, making findings in a written statement of reasons. Concerning the municipal defendants, the court found there were genuine issues of material fact about whether: the lot constituted a dangerous condition under the TCA; plaintiff's injury was proximately caused by the alleged dangerous condition; defendants' employees' acts or omissions created the alleged dangerous condition; the alleged dangerous condition created a foreseeable risk of injury; defendants had

6

constructive notice of the alleged dangerous condition; the alleged dangerous condition caused plaintiff's injuries; and whether defendants' conduct was palpably unreasonable.

The municipal defendants successfully sought reconsideration, and the trial court granted summary judgment for them in a May 30 order. After reconsideration, the court found that a "reasonable factfinder may conclude that the area where [plaintiff] fell was a dangerous condition," but determined plaintiff did not make a sufficient showing on the question of whether defendants' negligence caused the dangerous condition.

The court next found defendants could not be held liable under N.J.S.A. 59:4-2(b) because: 1) "[p]laintiff has not provided sufficient evidence to establish that the [defendants] had constructive notice of the alleged dangerous condition;" and 2) that defendants' failure to act was not palpably unreasonable.

On constructive notice, the trial court did "not find that the alleged dangerous condition was [of] such . . . an obvious nature that [Plainfield] would have discovered it[,] if it exercised due care." The court stated:

> The size of the pothole where plaintiff allegedly fell according to plaintiff's expert was 10 ft. long x 5 ft. wide and approximately 3/4 inches to 2 inches deep . . . . . Louise stated when looking at a photograph of the [l]ot that he would not have put in a request for repairs. Additionally, the plaintiff testified that she did not

7

A-4064-23

notice either the pothole or the wire the prior two times she parked in the [l]ot in November 2020. Furthermore, Mr. Louise testified that [Plainfield] does not conduct routine inspections of the parking lots unless a condition that needs maintenance comes to the attention of them. Here, the record is devoid of any complaints of the alleged dangerous condition or any prior incidents that arose out of the alleged dangerous activity.

The trial court also distinguished the facts of this case from that of Chatman v. Hall, 128 N.J. 394 (1992), stating:

This is not a matter where the alleged dangerous condition can be referred to as a "plumber's ditch" or a "cave in." See id. at 400. In Chatman, the New Jersey Supreme Court found that "[t]he length of time during which the hole existed as well as its alleged size creates a reasonable inference that the defendant employees had either actual or constructive notice of the hole, as does the affidavit of a neighbor who reported the hole." Id. at 418. While the Supreme Court noted that the nature and cause of the hole was not clear from the record, the hole was described as being very large and also referred to as a "plumber's" ditch and a "cave in." Id. at 399-400. The facts in the present matter are distinguishable from Chatman, as this [c]ourt is not confronted with a situation where the pothole at issue can be considered a "plumber's ditch" or "cave in" and the record is silent as to any complaints concerning the alleged dangerous condition prior to plaintiff's fall.

[(first alteration in original) (citation reformatted).]

Finally, the trial court found that, Dr. Ryduchowski's conclusion about pothole deterioration was not supported by factual evidence. The court stated:

8

[w]hile plaintiff's expert report states that the pothole was a result of impact over a period of years and made visible years prior to the accident, the report fails to identify when the pothole deteriorated into the alleged dangerous condition. The report fails to identify the volume of traffic that impacted the pavement; the construction materials that may have contributed to the pothole and what materials should have been used; and any factual support to the freeze/thaw cycle that may have contributed to the formation of the pothole.

The court next found defendants' actions were not palpably unreasonable, stating:

[Plainfield] cannot be deemed to be palpably unreasonable when they had a system in place for complaints, as the staff for the [DPW] would write down the complaints, bring it to a supervisor's attention, and put it within a binder. Further, this [c]ourt does not have the authority to instruct [Plainfield] on how to maintain its property. [Plainfield] conducts inspections, maintenance of potholes, and removals of debris/snow on a case-by-case basis. The record is silent as to any complaints prior to the subject accident concerning the alleged dangerous condition.

Plaintiff then moved for reconsideration of the court's May 30 order granting summary judgment to the municipal defendants, which was denied. In its August 9, 2024 order and supporting statement of reasons, the court further analyzed the constructive notice issue, distinguishing plaintiff's facts from

9

numerous unpublished cases plaintiff cited in support of her opposition to summary judgment. The trial court noted:

> [W]ithin these cases it was not just the size of the pothole, but the combination of facts including: prior records of filling potholes on the site of the accident prior to it, affidavits of other citizens regarding the pothole, the DPW conducting regular inspections of the area where the incident occurred, officers assigned to direct traffic at the location where the fall occurred, the police department observing the street where plaintiff fell and notifying the DPW to remedy such issues, awareness of the sinkhole prior to the incident, etc.

The court then distinguished the facts of plaintiff's case from some of our Tort Claims Act jurisprudence: Lodato v. Evesham Twp., 388 N.J. Super. 501 (App. Div. 2006); Milacci v. Mato Realty Co., 217 N.J. Super. 297 (App. Div. 1987); McGowan v. Borough of Eatontown, 151 N.J. Super. 440 (App. Div. 1977); as well as a federal case, Fine v. City of Margate, 48 F. Supp. 3d 772 (D.N.J. 2014). The court found that:

> The record does not contain any complaints about the dangerous condition prior to the accident occurring, any reports by employees of [Plainfield] about the alleged dangerous condition prior to the accident, and there [was] no evidence as to the presence of [Plainfield] within the [l]ot. Plaintiff's counsel argues throughout his papers that [Plainfield] had employees in the [l]ot shortly prior to the accident. However, there [was] no evidence that establishe[d] exactly when [Plainfield] was in the [l]ot prior to the accident. Even giving the plaintiff the benefit of all favorable

10

inferences that [Plainfield] employees were present in the [l]ot, this pothole was not reasonably of a size that it is one that would have been reported.

The trial court, reiterating its reasoning from the May 30, 2024 order, again found defendants' actions were not palpably unreasonable.

On appeal, plaintiff challenges the dismissal of the municipal defendants, contending that the trial court erred when it found no genuine issue of material fact on the questions of constructive notice and palpable unreasonableness. Plaintiff also argues that the court used an incorrect standard of law on reconsideration.

## II.

We review a trial court's decision on whether to grant or deny a motion for reconsideration for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

"[We] review the trial court's grant or denial of a motion for summary judgment de novo, applying the standard used by the trial court." Sackman Enters., Inc. v. Mayor of Belmar, 478 N.J. Super. 68, 75 (App. Div. 2024) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)).

We grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact challenged and [where] the moving party is entitled to a judgment or order as a matter of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting R. 4:46-2(c)). A fact is material and genuine where "the 'competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 24 (App. Div. 2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). The trial court's legal analysis or statutory interpretation is not entitled to any deference. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

III.

A.

On the reconsideration question, plaintiff argues that the trial court gave defendants an unjust advantage when it "utilized different standards . . . evaluating [defendants'] [m]otion for [r]econsideration and [plaintiff's] [m]otion for [r]econsideration, even though they were based on the exact same underlying [m]otion for [s]ummary [j]udgment."

12

Plaintiff first posits that the May 30 order was not final and should have been subject to the more relaxed reconsideration standard under Rule 4:42-2. Alternatively, plaintiff argues that if the May 30 order was final, we should disregard our prior decision in Lawson v. Dewar, 468 N.J. Super. 128 (App. Div. 2021), because it is "fundamentally unfair to consider two motions for reconsideration of summary judgment decisions under different standards, and especially to give the more lenient standard to the party seeking summary judgment . . . ."

We consider the relevant law.

"An order 'which adjudicates fewer than all of the claims as to all the parties' is interlocutory and shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice." Sadeeshkumar v. Venugopal, 478 N.J. Super. 25, 40 (App. Div. 2024) (quoting R. 4:42-2(b)). "Reconsideration under [Rule 4:42-2(b)] offers a 'far more liberal approach' than Rule 4:49-2, governing reconsideration of a final order." JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022) (quoting Lawson, 468 N.J. Super. at 134).

A motion for reconsideration under Rule 4:49-2 in and of itself is limited, and should only be utilized "for those cases which fall into that narrow corridor

13

in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

> Generally, an order is considered final if it disposes of all issues as to all parties. Petersen v. Falzarano, 6 N.J. 447, 452-53 (1951); In re Donohue, 329 N.J. Super. 488, 494 (App. Div. 2000) (citations omitted). Thus, in a multi-party, multi-issue case, an order granting summary judgment, dismissing all claims against one of several defendants, is not a final order subject to appeal as of right until all claims against the remaining defendants have been resolved by motion or entry of a judgment following a trial. McGlynn v. State, 434 N.J. Super. 23, 29 (App. Div. 2014) (citing Yuhas v. Mudge, 129 N.J. Super. 207, 209 (App. Div. 1974)).
>
> [Silviera-Francisco v. Bd. of Educ. of City of Elizabeth, 224 N.J. 126, 136 (2016) (citations reformatted).]

We are unpersuaded by plaintiff's arguments. The May 21 order was an interlocutory order dismissing defendants' motion for summary judgment subject to reconsideration under Rule 4:42-2(b). In contrast, the May 30 order dismissed the complaint in its entirety with prejudice, disposing of all plaintiff's claims against Plainfield and DPW. It follows that the May 30 order was a final order subject to reconsideration under Rule 4:49-2. Because the trial court

utilized the correct standards on reconsideration of each order under our court rules, we conclude there is no error on this issue.

Plaintiff next contends that use of separate reconsideration standards gives parties seeking summary judgment "an unfair advantage" on reconsideration of an order denying summary judgment. We recently reiterated the rationale behind using different reconsideration standards for interlocutory and final orders: "[O]ur jurisprudence imposes more stringent standards on reconsideration of, or relief from, final orders and judgments, in recognition of the value placed on finality, and the stability of judgments." State v. Keogh, 481 N.J. Super. 67, 84 (App. Div. 2025). In our opinion, it is not unfair to give trial courts greater discretion to reconsider interlocutory orders as opposed to final orders, given the rationale explained in Keogh. We conclude plaintiff's argument is without merit.

B.

We now consider whether the trial court committed error when it granted summary judgment dismissing the municipal defendants.

N.J.S.A. 59:4-2 states:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the

15

dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that . . .

> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

Given that all inferences go to the non-moving party, <u>Richter</u>, 246 N.J. at 515, we consider whether there is sufficient evidence in the record to create a question of fact on constructive notice.

> A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

> [N.J.S.A. 59:4-3.]

Plaintiff argues that certain evidence in the record tends to show defendants had constructive notice of the alleged dangerous condition. They cite: defendants' admission that a wire had been on the lot for four months;

16

plaintiff's expert report; the size of the pothole; defendants' responsibility for plowing snow; the presence of snow in the parking lot at the time of the incident; the permit-restricted nature of the lot; and defendants' failure to keep records.

Plaintiff claims that defendants admitted that a wire was present on the property four months prior to the incident. We find no support in the record for that claim. We note DPW Superintendent Louise's relevant deposition testimony:

> Q. So here's my question, to the best of your ability what is it that PSE&G did that was careless and reckless?
>
> A. I just noticed a new pole installed there. There appears to be [a] new pole put there.
>
> Q. And so, in other words, you think that the debris was left by PSE&G?
>
> [ATTORNEY FOR PSE&G]: Objection.
>
> A. I'm not sure, but I know that there's a new pole it looks like that was installed there.
>
> Q. And I understand that there's a new pole there. I'm trying to make the logical connection. You're making the allegation that PSE&G is responsible, which is fine and I have no issue with that, but what I want to know is the basis for that.
>
> So if there's a new pole there and she tripped on a wire in the parking lot, my assumption would be that what you're trying to say is that the thing that she tripped on

was there because of the work that was done on that pole; is that accurate?

A. Yes, that would be how I would look at it.

Q. Okay. And, again, assuming that to be true, that the wire – there was a wire, metal wire that was left in the parking lot by PSE&G related to work on that pole, okay, and then at that – if that is the case, is it your testimony that PSE&G then would be responsible for picking up this debris?

[ATTORNEY FOR PSE&G]: Objection.

A. That would be my assumption if they – yes.

[(Emphasis added).]

During his deposition, Louise did not testify that a wire had been present on the lot for the four months prior to the incident. His testimony, based on speculation, does not tend to prove facts to meet plaintiff's burden on constructive notice. The "facts" proffered by plaintiff are insufficient to show constructive notice, that is, that "the condition had existed for such a period of time . . . that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." Ibid.

We next consider whether plaintiff can rely on her expert report to establish constructive notice. We conclude that she cannot. Dr. Ryduchowski's report and certification are based solely on a review of depositions and her in-

18

person inspection of the pothole. Dr. Ryduchowski only speculated as to when the hole first formed, how long it had been there, and how it had progressed to its current size. Her unsupported opinion is insufficient to support a finding of constructive notice on its own.

Plaintiff next contends that defendants would have seen the pothole given that they plow snow and that the lot was permit-restricted.

It is well settled that "the mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Polzo, 196 N.J. at 581 (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). Here, plaintiff provided no evidence that defendants' employees had been in the lot prior to November 25, 2020, or that any complaints were ever filed regarding the pothole or the wire. Louise testified that DPW plows municipal parking lots when there is at least three inches of snow. Plaintiff supplied no facts to show the amount of snowfall on or before November 25, 2020, or at any other point in time prior to the incident. Plaintiff cannot rely on the permit-restricted status of the lot or the fact that the lot could have been plowed at some point to show defendants' opportunity to see the pothole in the lot prior to the incident.

A-4064-23

Plaintiff finally contends that the size of the pothole proves the obvious nature of the danger. There is no dispute that the pothole here measured approximately ten feet in length and five feet in width, with a varied depth of three quarters of an inch to two inches. Giving all inferences to plaintiff, a finder of fact could find this pothole represented a dangerous condition. However, the obvious and dangerous nature of the pothole is not enough. Plaintiff has failed to offer any evidence to prove that the dangerous condition had existed for a significant period prior to the accident to establish constructive knowledge. It follows that plaintiff cannot satisfy her burden under N.J.S.A. 59:4-2(b).

While we find that the trial court correctly concluded that there was no genuine issue of material fact on constructive notice, for the sake of completeness, we briefly consider the second question in the N.J.S.A. 59:4-2(b) analysis, palpable unreasonableness.

Our Supreme Court notes

> [t]he term "palpably unreasonable" - as used in N.J.S.A. 59:4-2 - "implies behavior that is patently unacceptable under any given circumstance." When a public entity acts in a palpably unreasonable manner, it should be "obvious that no prudent person would approve of its course of action or inaction." The duty to refrain from palpably unreasonable conduct differs in degree from the ordinary duty of care that is owed under the negligence standard.

A-4064-23

> [Polzo, 209 N.J. at 75-76 (quoting Muhammad v. N.J. Transit, 176 N.J. 185, 195-96 (2003)) (citing Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985))].

Palpable unreasonableness is a question of fact. Est. of Massi v. Barr, 479 N.J. Super. 144, 160 (App. Div. 2024). "[I]n 'appropriate circumstances,' the question may be decided by the court as a matter of law, upon an application for summary judgment." Ibid. (citing Polzo, 209 N.J. at 75 n.12). For purposes of summary judgment, the question becomes: giving all inferences to the non-moving party, was Plainfield's failure to temporarily patch or repair the pothole palpably unreasonable?

Plaintiff failed to produce material facts sufficient to demonstrate that defendants' alleged failure to patch or repair the pothole was palpably unreasonable. Plaintiff produced no complaints regarding the pothole. She also testified that she had not seen the pothole prior to the incident, although she had been in the parking lot at least twice before without issue.

These facts are unlike Est. of Massi, 479 N.J. Super. at 172, where "the chronically poor condition of the roadway, and the failure of hundreds of attempted repairs and patches to cure the defect, plus the numerous complaints received, are enough to present a triable issue." Plaintiff has provided no such evidence regarding the municipal parking lot. It follows that she cannot meet

21

her burden at summary judgment on the question of Plainfield's palpable unreasonableness.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division